24 October 2000

No. 2--99--0701

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

In re
 DETENTION OF DONALD ) Appeal from the Circuit Court

KORTTE ) of McHenry County. )

) )

) No. 98--MR--220

(The People of the State of )

Illinois, Petitioner-Appellee, ) Honorable 

v. Donald Kortte, Respondent-  ) Michael J. Sullivan,

Appellant).  ) Judge, Presiding.

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Respondent, Donald Kortte, appeals the trial court's order committing him pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 
et seq.
 (West 1998)).  He argues that section 30(c) of the Act (725 ILCS 207/30(c) (West 1998)) unconstitutionally prevented him from calling an expert witness at his trial.  Specifically, he contends that the provision (1) deprived him of due process of law (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2); and (2) violates the separation of powers (Ill. Const. 1970, art. II, §1).  We reverse and remand.

On November 20, 1998, the State petitioned for an order of commitment, alleging as follows.  In 1988, respondent was convicted of two counts of aggravated criminal sexual assault.  The victim of those crimes was a minor.  Respondent was sentenced to 21 years in the Department of Corrections (DOC).  While he was incarcerated, respondent possessed pictures of nude minors and a document that graphically described sexual activities with minors.  Within 90 days, respondent would begin a period of supervised release.  Dr. Marc Levinson, a clinical psychologist for the DOC, had diagnosed respondent with pedophilia.  Respondent had failed to take advantage of opportunities for treatment.  He was dangerous because his mental disorder created a substantial probability that he would commit future acts of sexual violence.

Attached to the petition was a certified statement showing that respondent had been convicted of aggravated criminal sexual assault.  Also attached was Levinson's evaluation of respondent. Levinson performed that evaluation to determine whether respondent was subject to commitment under the Act.  Because respondent refused to participate, Levinson assessed him by reviewing his DOC "master file" and communicating with his DOC treatment providers.  Levinson outlined the factual basis for his diagnosis of pedophilia and identified several factors indicating that respondent would be a recidivist.  According to Levinson, respondent's pedophilia was a mental disorder that created a substantial probability that he would engage in further acts of sexual violence.  Levinson recommended that respondent be committed under the Act.

On November 24, 1998, the court conducted a hearing to determine whether there was probable cause to believe that respondent was sexually violent.  Levinson testified in accordance with his evaluation, specifying that the DOC master file contained respondent's criminal records, mental health and treatment records, and DOC disciplinary history.  The court found probable cause and ordered the Department of Human Services (DHS) to detain and evaluate respondent.  The case was set for trial.

On January 15, 1999, the State moved to compel respondent to submit to the DHS evaluation, in which he had refused to participate.  Alternatively, the State moved to prohibit respondent from calling an expert witness at trial.  The court ruled that respondent could not be forced to submit to the evaluation.  However, in accordance with section 30(c) of the Act, the court  barred respondent from calling any expert who evaluated him.

On March 29, 1999, respondent waived his right to a jury and was tried by the court.  The State called Levinson, who testified again in accordance with his evaluation.  Daniel Kazy-Garey, a Harvard police officer, testified about the facts that led to respondent's convictions of aggravated criminal sexual assault.  Anthony J. Wehmhoff, a DOC official, testified that he discovered in respondent's possession the sexually explicit pictures and document to which the State's petition referred.

Finally, the State called Dr. Barry Mark Leavitt, who was engaged by the DHS to evaluate respondent.  Because respondent refused to participate, Leavitt evaluated him by reviewing the DOC master file.  Leavitt stated that the file contained mental health evaluations, disciplinary reports, psychiatric notes, treatment reports, and police reports.  Like Levinson, Leavitt diagnosed respondent with pedophilia.  He testified to the factual basis for his diagnosis and identified several factors suggesting that respondent would be a recidivist.  He concluded that, because of respondent's mental disorder, a substantial probability existed that respondent would commit another sexually violent crime.

The State rested, and respondent proffered no evidence.  The court found that respondent was sexually violent and committed him to the custody of the DHS for as long as he was sexually violent.  Respondent's motion for a new trial was denied, and he appealed.

The Act "allows the State to extend the incarceration of criminal defendants beyond the time they would otherwise be entitled to release if those defendants are found to be 'sexually violent.' "  
In re Detention of Samuelson
, 189 Ill. 2d 548, 552 (2000).  A "sexually violent person" is one who

"has been convicted of a sexually violent offense *** and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence."  725 ILCS 207/5(f) (West 1998).

Here, respondent had been convicted of aggravated criminal sexual assault (720 ILCS 5/12--14 (West 1998)), which is a "sexually violent offense."  See 725 ILCS 207/5(e)(1) (West 1998).

When a person is imprisoned for a sexually violent offense and "may meet the criteria for commitment as a sexually violent person," the agency that is authorized to release him must notify the Attorney General and the relevant State's Attorney "as soon as possible beginning 3 months prior to the applicable date of" release.  725 ILCS 207/10(b) (West 1998).  The agency must also provide a "comprehensive evaluation of the person's mental condition, the basis upon which a determination has been made that the person is subject to commitment" under the Act.  725 ILCS 207/10(c)(2) (West 1998).  In this case, the DOC was the agency that was authorized to release respondent, and Levinson's was the required evaluation.

After the agency gives the requisite notice, the State may petition for an order of commitment.  725 ILCS 207/15 (West 1998). If it does so, the court must "hold a hearing to determine whether there is probable cause to believe that the person named in the petition is a sexually violent person."  725 ILCS 207/30(b) (West 1998).  Section 30(c) of the Act states in part:

"If the court determines after a hearing that there is probable cause to believe that the person named in the petition is a sexually violent person, the court shall order that the person be taken into custody if he or she is not in custody and shall order the person to be transferred within a reasonable time to an appropriate facility for an evaluation as to whether the person is a sexually violent person.  
If the person named in the petition refuses to speak to, communicate with, or otherwise fails to cooperate with the expert from the Department of Human Services who is conducting the evaluation, the person shall be prohibited from introducing testimony or evidence from any expert or professional person who is retained or court appointed to conduct an evaluation of the person.
" (Emphasis added.) 725 ILCS 207/30(c) (West 1998).

The case then proceeds to trial, where the State must prove beyond a reasonable doubt the allegations in its petition.  725 ILCS 207/35(d)(1) (West 1998).  Although the proceedings are characterized as civil (725 ILCS 207/20 (West 1998)), a respondent who is tried under the Act has all the constitutional rights of a criminal defendant (725 ILCS 207/35(b) (West 1998)), including the right to due process of law.

In this appeal, respondent challenges the validity of the emphasized portion of section 30(c).  He first argues that, as it was applied to him, the provision denied him due process by barring him "from presenting any expert testimony contradicting that offered by the State."  We agree.

The right to due process of law is the right to a fundamentally fair trial.  
Chambers v. Mississippi
, 410 U.S. 284, 294, 35 L. Ed. 2d 297, 308, 93 S. Ct. 1038, 1045 (1973).  In criminal proceedings, the State may not maintain a strategic advantage over the defendant when that advantage casts a pall on the proceedings.  See 
Ake v. Oklahoma
, 470 U.S. 68, 79, 84 L. Ed. 2d 53, 63, 105 S. Ct. 1087, 1094 (1985).  Thus, in proceedings under the Act, the respondent too is entitled to defend himself on a "level playing field."

The obvious purpose of section 30(c) is to prevent either the State or the respondent from having an evidentiary advantage.  The provision dictates as follows: if the respondent does not cooperate with the DHS expert evaluator, he may not call his own expert evaluator, with whom he presumably 
has
 cooperated.  Theoretically, the provision guarantees that both parties are able to present evidence substantially equal in character.

However, this case illustrates that, in enacting section 30(c), the legislature made an erroneous assumption.  The legislature assumed that, if the respondent does not submit to the DHS evaluation, the State is incapable of calling an evaluating expert.  That may be true in some cases, but here it was not.

Although neither Levinson nor Leavitt examined respondent personally, both were able to evaluate whether he was sexually violent by referring to other sources of information, 
e.g.
, the DOC master file.  The State called both experts at trial and elicited their evaluations.  Nevertheless, because respondent did not cooperate with Leavitt, section 30(c) prohibited him from calling 
any
 expert of his own, even one who, like Levinson and Leavitt, did not examine him personally.  As a result, respondent was virtually incapable of rebutting the State's evidence.  By any definition, the playing field was not level in this case, and respondent was denied due process of law.

In 
People v. Wheeler
, 151 Ill. 2d 298 (1992), the supreme court faced a similar problem.  There, the defendant was charged with aggravated criminal sexual assault.  Before trial, he learned that the State intended to introduce expert testimony that the alleged victim, C.K., suffered from rape trauma syndrome.  According to section 115--7.2 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 115--7.2 (now 725 ILCS 5/115--7.2 (West 1998))), such testimony was admissible.

The defendant moved to compel C.K. to submit to an examination by his own expert, but section 115--7.1 of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 115--7.1 (now 725 ILCS 5/115--7.1 (West 1998))) prevented the trial court from granting that motion.  At trial, the State called its expert, who had examined C.K. personally.  The defendant appealed his conviction, arguing that sections 115--7.1 and 115--7.2, as they were applied to him, denied him due process of law.  The supreme court agreed.

The court ruled that, although the defendant was free to call a nonexamining expert, the State's ability to call an examining expert gave it "a clear advantage" in its effort to prove that C.K. suffered from rape trauma syndrome.  
Wheeler
, 151 Ill. 2d at 311.  Thus, the defendant's trial was "fundamentally unfair."  
Wheeler
, 151 Ill. 2d at 311.  The court concluded that, unless C.K. consented to an examination by the defendant's expert, the State could not call an examining expert of its own.  
Wheeler
, 151 Ill. 2d at 312.  In other words, the playing field had to be level.

A similar conclusion is warranted here.  Despite respondent's refusal to cooperate with Leavitt, the State called two evaluating experts who had not examined respondent personally.  Therefore, although respondent was not entitled to call his own 
examining
 expert, section 30(c) unconstitutionally prevented him from calling an evaluating expert who, like the State's experts, had not examined him personally.

Section 115--6 of the Code (725 ILCS 5/115--6 (West 1998)), to which both parties compare section 30(c) of the Act, avoids this problem.  Section 115--6 provides that, if a defendant indicates that he may raise the defense of insanity or of an intoxicated or drugged condition, the court must grant the State's motion to compel the defendant to submit to various examinations.  The section then states:

"The refusal of the defendant to cooperate in such examinations shall not automatically preclude the raising of the aforesaid defenses but shall preclude the defendant from offering expert evidence or testimony tending to support such defenses 
if the expert evidence or testimony is based upon the expert's examination of the defendant.
  If the Court, after a hearing, determines to its satisfaction that the defendant's refusal to cooperate was unreasonable it may, in its sound discretion, bar any or all evidence upon the defense asserted. (Emphasis added.) 725 ILCS 5/115--6 (West 1998).

The distinction between section 115--6 and section 30(c) is clear.  If a defendant reasonably refuses to cooperate with the State's examinations, section 115--6 prevents him from introducing only that evidence that the State is unable to introduce itself, 
i.e.
, the testimony of an examining expert.  Thus, no party has an evidentiary advantage; both may call examining experts, or both may call nonexamining experts.  Section 30(c), by contrast, prevents an uncooperative respondent from introducing not only the evidence that the State cannot introduce itself but also the evidence that the State still can: the testimony of a 
nonexamining
 expert.  When the State calls such an expert, section 30(c) is unconstitutional.

Of course, if the respondent refuses to cooperate with the DHS expert and the State does not call 
any
 kind of evaluating expert, section 30(c) fairly prohibits the respondent from calling any expert of his own.  Thus, section 30(c) is not unconstitutional on its face.  However, we believe that section 30(c) will usually be applied as it was here.  In fact, we can foresee an even more egregious scenario in which a respondent submits to the evaluation by the agency that is authorized to release him but, after the court finds probable cause, refuses to cooperate with the DHS expert.  In that case, the State could call an 
examining
 expert at trial, and section 30(c) would still prevent the respondent from calling any expert at all.

Therefore, although we allow section 30(c) to stand, we urge the legislature to modify it so that it expressly allows any respondent who is tried under the Act to counter the State's evidence with evidence of equal quality.  If the respondent does not submit to the DHS evaluation but the State still calls an examining expert, the respondent must be permitted to call an examining expert of his own.  If the State calls only nonexamining experts, the respondent must be permitted to call one as well.  Furthermore, if the respondent is indigent, he is entitled to the appointment of an expert of the kind that he is permitted to call.  See 
Ake
, 470 U.S. at 83, 84 L. Ed. 2d at 66, 105 S. Ct. at 1096.

In making our recommendation to the legislature, we reject respondent's rather summary argument that section 30(c) is facially invalid because it violates the separation of powers.  As respondent concedes, the legislature is permitted to enact rules of evidence.  
People v. Rolfingsmeyer
, 101 Ill. 2d 137, 140 (1984).  Section 30(c) simply states that, under certain circumstances, the testimony of a respondent's expert is inadmissible.  Thus, it is merely a rule of evidence and does not violate the separation of powers.  
Cf.
 
Rolfingsmeyer
, 101 Ill. 2d at 141 (no violation where statute provided that defendant's refusal to submit to breath test was admissible at trial for driving under influence of alcohol).  As it was applied here, however, it denied respondent due process of law.

For these reasons, the judgment of the circuit court of McHenry County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BOWMAN, P.J., and HUTCHINSON, J., concur.