*In re* DETENTION OF WILLIAM ALLEN, (The People of the State of Illinois, Petitioner-Appellee, v. William Allen, Respondent-Appellant).

Second District No. 2—00—1379

Opinion filed June 25, 2002.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, and James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and William L. Browers and Huma A. Khan, Assistant Attorneys General, of counsel), for the People.

JUSTICE BYRNE delivered the opinion of the court:

Following a jury trial, respondent, William Allen, was adjudicated to be a sexually violent person pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 et seq. (West 1998)). Thereafter, the court committed respondent to the custody of the Department of Human Services (DHS). On appeal, respondent argues that (1) the State's petition was untimely filed; (2) the Act is unconstitutional; and (3) he was prejudiced by the admission of evidence of sexual-propensity offenses. We affirm.

## FACTS

The following relevant facts are taken from the record. In 1990, respondent pleaded guilty to one count of aggravated criminal sexual abuse and was placed on probation in case No. 90—CF—945. Respondent committed the offense when he fondled the buttocks of a seven-year-old girl and placed his finger in her vagina. The incident occurred while the victim was at his home visiting his daughter. In two separate incidents in 1993, while respondent was on probation, he sexually assaulted his 11-year-old daughter when he fondled her breasts, buttocks, and vagina while she was bathing. Both times, respondent brandished a knife and threatened to kill her if she disclosed the incidents to anyone (case No. 93—DF—1156). Based on the incidents against his daughter, respondent's probation was revoked and he was sentenced to a seven-year term of imprisonment in case No. 90—CF—945. Respondent pleaded guilty to one count of criminal sexual abuse in case No. 93—DF—1156, and thereafter he was sentenced to a seven-year term of imprisonment to be served consecutively to the seven-year term imposed in case No. 90—CF—945.

Respondent began serving his sentence for the convictions at the Department of Corrections (DOC). Prior to release, he was examined by Dr. Agnes Jonas. Based on her evaluation, it was determined that respondent was not to be the subject of a petition to commit. Thereafter, respondent was released and placed on mandatory supervised release (MSR) on August 29, 1998.

Respondent allegedly violated the terms of the MSR by moving

back into the home of his family where the daughter, whom he had sexually assaulted, still resided. However, on November 4, 1998, the Prisoner Review Board declared respondent not to be an MSR violator. Following his second release from physical custody on November 5, 1998, respondent violated MSR on November 10, 1998, when he resumed living with his family. Respondent was scheduled to be released from the custody of the DOC on September 5, 1999, and his parole was to be continued at that time.

On July 22, 1999, while respondent remained in the custody of the DOC for violating the conditions of his parole, Dr. Jonas evaluated respondent again and this time recommended commitment. On September 1, 1999, within 90 days of the second discharge, the State filed a petition to commit.

The petition alleged that respondent had been diagnosed as suffering from pedophilia, a "Sexually Attracted to Females, Nonexclusive Type." Respondent was also diagnosed as having a personality disorder with antisocial features, seizure disorder, and psychological and environmental problems. The petition further alleged that respondent had a history of committing sexually violent offenses and that these mental disorders created a substantial probability that he would engage in acts of sexual violence in the future.

On September 28, 1999, following a hearing, the trial court determined there was probable cause to conduct further proceedings on the State's petition. The trial court also ordered that respondent be transferred to DHS for further evaluation. See 725 ILCS 207/30(c) (West 1998).

The commitment trial began on September 12, 2000. Because respondent does not challenge the sufficiency of the evidence or the credibility of the witnesses, we will briefly summarize the evidence presented at the trial.

At the trial, the State presented evidence of respondent's sexually deviant behavior, previous sexual offenses, treatment progress, and the testimony of expert witnesses whose evaluations led them to recommend that respondent be committed.

The State also called Dr. Agnes Jonas and Dr. Barry Leavitt. Dr. Jonas diagnosed respondent as a pedophile, sexually attracted to females, nonexclusive type. Dr. Jonas testified to the factual basis of her diagnosis and identified several factors suggesting that respondent would commit future acts of sexual violence. In her opinion, there was a substantial probability that respondent would commit a sexually violent offense in the future.

Dr. Leavitt interviewed respondent following the probable cause hearing. He diagnosed respondent as a nonexclusive, "female type"

pedophile who also suffered from other various mental disorders. Dr. Leavitt used several recognized tests to predict respondent's likelihood of reoffending. Based on respondent's interview, his history of sexual violence, mental health and disciplinary problems, his failure to successfully complete treatment programs, and the results of the psychological testing, Dr. Leavitt opined that respondent's mental disorders predisposed him to commit acts of sexual violence in the future. Dr. Leavitt concluded that a substantial probability existed that respondent would commit another sexually violent crime in the future.

Respondent's expert, Dr. Eric Ostrov, a forensic psychologist, agreed that respondent suffered from a mental disorder as defined by the Act. Ostrov believed that there was insufficient information to sustain the diagnosis of pedophilia. He concluded that, to a reasonable degree of medical certainty, there was not a substantial probability that respondent would reoffend and statistics showed such a prediction was correct 84% of the time.

The jury returned a verdict finding respondent to be substantially likely to reoffend. Following a dispositional hearing, the trial court ordered respondent committed to the DHS. Respondent's motion for a new trial was denied, and he timely appeals.

## ANALYSIS

### I. Timely Filing of Petition

■ Respondent first contends on appeal that the order committing respondent to the DHS must be reversed because the petition to commit was not timely filed by the State. The applicable section of the Act at the time the petition was filed on September 1, 1999, provides, in pertinent part:

> "(b) A petition filed under this [s]ection shall allege that all of the following apply to the person alleged to be a sexually violent person:
>
> * * *
>
> (2) The person is within 90 days of discharge or entry into mandatory supervised release from a Department of Corrections correctional facility for a sentence that was imposed upon a conviction for a sexually violent offense or for a sentence that is being served concurrently or consecutively with a sexually violent offense or is within the initial 30 days of the person's entry date into parole or mandatory supervised release[.]" 725 ILCS 207/15(b)(2) (West Supp. 1999).

Respondent asserts that he was "initially" placed on MSR on August 29, 1998, and therefore the State had 30 days from his initial

MSR, or until September 28, 1998, to file a timely petition. Because the petition was filed on September 1, 1999, more than 30 days from his entry into the initial MSR, respondent contends that the petition was untimely filed. The State counters that, at the time the commitment petition was filed, respondent was incarcerated for violating MSR and was still serving time for the aggravated criminal sexual abuse convictions at the DOC and, because the petition was filed within 90 days of respondent's second discharge date of September 5, 1999, the petition was timely filed.

■ This issue requires interpreting section 15 of the Act. In construing the statute, we must ascertain and give effect to the legislature's intent. The language of the statute generally provides the best evidence of the legislature's intent. Where the statutory language is clear and unambiguous, a court must give effect to the plain and ordinary meaning of the words without resorting to extrinsic aids for construction. *In re Detention of Gardner*, 307 Ill. App. 3d 85, 90 (1999). Moreover, a statute must be read as a whole, and no word or paragraph should be interpreted so as to be rendered meaningless. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111 (1993). The construction of a statute is a question of law, which we review *de novo*. *Gardner*, 307 Ill. App. 3d at 90.

With these principles in mind, we find that the petition was timely filed. The statute specifically references the dates for filing a petition: "within 90 days of discharge or entry into mandatory supervised release" or "within the initial 30 days of the person's entry date into parole or mandatory supervised release." 725 ILCS 207/15(b)(2) (West Supp. 1999). Contrary to respondent's argument, there are no limitations to filing a petition within 30 days of the *first* MSR or parole date, as the word "initial" does not modify the term "discharge," "mandatory supervised release," or "parole."

Moreover, because there are no restrictions to filing a petition within 30 days following the initial MSR or parole entry date, it is clear that the legislature did not contemplate any limitations to filing a petition within 30 days of the offender's entry date following a *violation* of parole or mandatory supervised release. Had the State been required to file a petition following the date of the first parole or mandatory supervised release or following the first violation of parole or mandatory supervised release, that language would have been incorporated in the Act. If this court can ascertain the legislative intent from the plain language of the statute itself, the intent must prevail. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 389 (1996). We will not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the express

legislative intent. See *Barnett*, 171 Ill. 2d at 389. We also note that the most recent version of section 15 of the Act (725 ILCS 207/15(b—5) (West 2000)), effective January 1, 2000, does not contain the limitations that respondent advocates.

Respondent maintains that "the second parole violation had absolutely no bearing on the timeliness of the sexually violent petition." Respondent asserts that, by gaining a second "bite of the apple" to file a petition, "the State could at any time file false parole violations in order to indefinitely elongate the time for filing a timely petition," and this cannot be what the legislature envisioned. We reject this argument. In fact, we find that the plain language of the statute clearly allows the State to have unlimited "bites of the apple," as long as the petition is filed within the time limits prescribed. Furthermore, if we were to adopt respondent's reasoning, there would be little incentive to encourage parole because the State would always be precluded from filing a commitment petition in the case where a sexually violent respondent violates parole more than 30 days after his release.

■ We therefore hold that section 15(b) clearly directs the State to file a petition to have an offender committed as a sexually violent person either (1) within 90 days of *any* discharge or entry into MSR from a DOC correctional facility for a sentence that was imposed upon a conviction for a sexually violent offense *or* (2) within the initial 30 days of the person's entry date into *any* MSR or parole. Respondent was within 90 days of discharge from a DOC correctional facility for a sentence that was imposed upon his conviction for a sexually violent offense when the State filed the petition to have respondent committed as a sexually violent person. Accordingly, the petition was timely filed.

## II. Constitutionality of Section 25(e) of the Act

Respondent next contends that section 25(e) of the Act (725 ILCS 207/25(e) (West 1998)) violates his constitutional right to due process of law because it does not provide an indigent respondent with as many medical experts as the State uses. Respondent contends that this "uneven playing field" is prejudicial because the jurors are likely to view the greater number of experts testifying for the State as indicative of the weakness of his case.

■ Section 25(e) provides that, whenever a person who is the subject of the petition is required to submit to an examination under the Act, he or she may retain experts or professional persons to perform an examination. If the person is indigent, the court is required to appoint a qualified and available expert or a professional person to perform an examination, and the county must pay the costs of the

examination and participation in the trial. 725 ILCS 207/25(e) (West 1998).

■ We review *de novo* the constitutionality of a statute. *In re Detention of Varner*, 315 Ill. App. 3d 626, 633 (2000). The party challenging a statute bears the burden of clearly establishing that it is unconstitutional. *People v. DePalma*, 256 Ill. App. 3d 206, 210 (1994). All statutes carry a strong presumption of constitutionality; we will uphold a statute whenever reasonably possible, and any doubts will be resolved in favor of the law's validity. *People v. Jeffries*, 164 Ill. 2d 104, 111 (1995).

■ The right to due process of law is the right to a fundamentally fair trial. *Chambers v. Mississippi*, 410 U.S. 284, 294, 35 L. Ed. 2d 297, 308, 93 S. Ct. 1038, 1045 (1973). In criminal proceedings, the State may not maintain a strategic advantage over the defendant when that advantage casts a pall on the proceedings. See *Ake v. Oklahoma*, 470 U.S. 68, 79, 84 L. Ed. 2d 53, 63, 105 S. Ct. 1087, 1094 (1985). The Act provides that all constitutional rights available to a defendant in a criminal proceeding are available to the person who is the subject of a petition under section 15. 725 ILCS 205/35(b) (West 1998). See *People v. Capoldi*, 37 Ill. 2d 11, 18 (1967).

■ Procedural due process issues require a three-part analysis that considers the following: first, whether there exists a liberty or property interest that has been interfered with by the State; second, the risk of an erroneous deprivation of such an interest through the procedures already in place, while considering the value of additional safeguards; and third, the effect the administrative and monetary burdens would have on the State's interest. *Varner*, 315 Ill. App. 3d at 635.

■ There is no doubt that respondent's liberty is jeopardized. We must therefore examine the risk of an erroneous deprivation in the context of the procedural safeguards already existing in the statute. *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 419 (1997). Procedural due process guarantees that a defendant has the right to present relevant, competent evidence in his defense and that the State must take steps to ensure that the indigent defendant has a fair opportunity to present his defense. See, *e.g.*, *Ake*, 470 U.S. at 76, 84 L. Ed. 2d at 61, 105 S. Ct. at 1092 (State must pay for psychiatric evaluation); *People v. Watson*, 36 Ill. 2d 228, 232 (1966) (indigent defendant should receive court-appointed handwriting expert to defend against forgery charge). The Act already guarantees that an indigent respondent is entitled to a competent medical expert. 725 ILCS 207/25(e) (West 1998). Given the procedural safeguards already existing in the Act, the risk of erroneous deprivation in this case is negligible.

Respondent mistakenly equates the quantity of experts with the quality of their testimony. By focusing on the number of experts testifying at the hearing, respondent ignores the availability of other procedural safeguards. As stated above, respondent is entitled to counsel and to a jury trial. See *People v. Trainor*, 196 Ill. 2d 318, 335-36 (2001). The appointed counsel can compensate for the lack of additionally appointed expert witnesses by thoroughly cross-examining the State's experts and by exposing to the jury the weaknesses of the State's case. We note too that respondent also fails to suggest how another appointed expert would have bolstered his defense or placed him on par with the State.

Respondent's reliance on *In re Detention of Kortte*, 317 Ill. App. 3d 111 (2000), is misplaced. In that case, the respondent was deprived of a "level playing field" because he was prohibited from calling *any* expert of his own and therefore was virtually incapable of rebutting the State's evidence. *Kortte*, 317 Ill. App. 3d at 116. Here, however, respondent was able to rebut the State's evidence with his own expert.

Respondent also ignores that a State need not "purchase for the indigent defendant *all* the assistance that his wealthier counterpart might buy." (Emphasis added.) *Ake*, 470 U.S. at 77, 84 L. Ed. 2d at 62, 105 S. Ct. at 1093. "[F]undamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system.' " *Ake*, 470 U.S. at 77, 84 L. Ed. 2d at 62, 105 S. Ct. at 1093, quoting *Ross v. Moffitt*, 417 U.S. 600, 612, 41 L. Ed. 2d 341, 352, 94 S. Ct. 2437, 2444 (1974). We find that respondent has had an adequate opportunity to present his claim fairly within the adversary system. We therefore hold that the Act does not violate procedural due process by failing to provide an indigent respondent with the same number of expert witnesses as the State.

### III. Prejudicial Effect of Sexual-Propensity Evidence

■ Respondent next contends that the repeated and inflammatory detailed accounts of the previous sexual offenses committed by respondent had a prejudicial effect on the jury. Respondent concedes that he technically waived this argument when his trial counsel failed to object to the introduction of this evidence at trial. However, he contends that we should nevertheless address the issue under the plain error doctrine because his trial counsel rendered ineffective assistance when he failed to object.

Relevant evidence is defined as evidence having any tendency to fairly make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence. *People v. Eyler*, 133 Ill. 2d 173, 217 (1989). The Supreme

Court in *Kansas v. Hendricks*, 521 U.S. 346, 362, 138 L. Ed. 2d 501, 515, 117 S. Ct. 2072, 2082 (1997), implicitly approved the introduction of sexual-propensity evidence, finding that such evidence was intended not to punish past misdeeds but primarily to show the respondent's mental condition and to predict future behavior. We note also that evidence of respondent's sexual offenses, which forms the basis for his commitment, must be shown by the State to meet its burden of proof under the Act. See 725 ILCS 207/5(b), (f) (West 1998). In this case, the details of the previous sexual offenses committed by respondent are relevant to prove that he suffers from pedophilia and is likely to engage in predatory acts of sexual violence in the future.

The Appellate Court, First District, recently considered whether the Act violates procedural due process " 'because the presentation of sexual[-]propensity evidence to a lay jury compromises the integrity and accuracy of the fact-finding process, creating an unacceptable risk that the Respondent will be erroneously deprived of liberty.' " *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 1086-87 (2000). In rejecting the respondent's argument, the court concluded that, although sexual-propensity evidence may be prejudicial, it nevertheless is clearly relevant to the proceedings under the Act. *Bailey*, 317 Ill. App. 3d at 1089-90.

While respondent frames the issue differently here than the respondent in *Bailey*, respondent's ultimate contention is the same, and so is our conclusion. In the trial court's discretion, relevant evidence may be excluded if its prejudicial effect substantially outweighs its probative value. *People v. Eyler*, 133 Ill. 2d 173, 218 (1989). Here, the evidence was probative in that it was material to the State's burden of proof, to the diagnosis of respondent's mental disorders, and to the substantial probability that respondent will commit further acts of sexual violence. Any degree of prejudice resulting from this evidence flows from its natural probative effect. We therefore conclude that the probative value of the sexual-propensity evidence outweighed its prejudicial effect.

 We also find that trial counsel was not ineffective for failing to object to the introduction of the sexual-propensity evidence. To prevail on a claim of the ineffective assistance of counsel, the claimant must prove both that counsel's conduct fell below an objective standard of reasonableness and that there was a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68 (1984); *People v. Howery*, 178 Ill. 2d 1, 51 (1997). Because the evidence was relevant and its probative value outweighed the prejudicial effect, any

1006

objection would have been unavailing. Therefore, respondent has failed to show that his trial counsel was ineffective.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and BOWMAN, JJ., concur.