# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Commitment of Brown*, 2012 IL App (2d) 110116

---

| | |
|---|---|
| Appellate Court Caption | *In re* COMMITMENT OF ROBERT D. BROWN (The People of the State of Illinois, Petitioner-Appellee, v. Robert D. Brown, Respondent-Appellant). |
| District & No. | Second District <br> Docket No. 2-11-0116 |
| Filed | June 11, 2012 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of respondent's request for conditional release from his commitment under the Sexually Violent Persons Act was upheld on appeal, where the evidence did not support his claim that he committed no sexual infractions during his incarceration, he had no support system other than a conditional release officer if he was placed on conditional release, he minimized treatment without having availed himself of treatment, and he had no employment skills. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 02-MR-65; the Hon. Christopher R. Stride and the Hon. Fred Foreman, Judges, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Gillian E. Gosch, of Gainor & Gosch, P.C., of Waukegan, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Michael M. Glick and Erica R. Seyburn, Assistant Attorneys General, of counsel), for the People.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.

Justices Hutchinson and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1 Respondent, Robert D. Brown, was found by a jury to be a sexually violent person and was committed to the Department of Human Services by the circuit court of Lake County. He appeals. For the reasons that follow, we affirm.

¶ 2 BACKGROUND

¶ 3 On January 16, 2002, the State filed a petition pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2002)), alleging that respondent was a sexually violent person. The petition alleged that respondent had been convicted of the offense of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, ¶ 12-14) and was sentenced to 23 years in the Illinois Department of Corrections (DOC) in 1991, and had been convicted of rape (Ill. Rev. Stat. 1979, ch. 38, ¶ 11-1(a)) and was sentenced to 12 years' imprisonment in 1982. The petition further alleged that respondent was scheduled for parole within 90 days of the filing of the petition; that respondent suffered from eight mental disorders; and that respondent was dangerous to others because his mental disorders created a substantial probability that he would engage in acts of sexual violence. Attached to the petition was a psychological evaluation of respondent conducted by Dr. Anthony T. Schaab of DOC on October 9, 2001. Dr. Schaab concluded that respondent's mental disorders of paraphilia and personality disorder with antisocial features made it "substantially probable" that respondent would engage in continued acts of sexual violence should he be released into the community. On January 18, 2002, the trial court held a probable cause hearing, after which it found probable cause and remanded respondent to the county jail. The State and respondent filed jury demands.

¶ 4 For reasons not germane to this appeal, the case was continued by agreement for years without a disposition. On February 14, 2008, the State moved for an updated DOC evaluation, and on April 29, 2008, the State filed an amended motion for a "current" evaluation. In the amended motion, the State alleged that Dr. Schaab, who conducted the initial DOC evaluation, had retired from DOC and was prevented by contract from testifying at respondent's trial, thus making Dr. Schaab "unavailable." Respondent objected to a second

-2-

DOC evaluation, arguing that a second evaluation "for the sole purpose of gathering evidence against [respondent]" violated respondent's due process rights. After a hearing, the trial court granted the State's motion, and Dr. Jacqueline N. Buck of DOC conducted a second evaluation of respondent. On June 5, 2009, the State was given leave to file its amended petition for commitment pursuant to the Act, based upon Dr. Buck's finding that respondent suffered from paraphilia, a mental disorder that predisposed respondent to commit acts of sexual violence.

¶ 5 Respondent's jury trial commenced on April 14, 2010. The State presented the following evidence. Dr. Buck, a clinical psychologist under contract with DOC, received a court order in July 2008 to examine respondent, who refused to cooperate in the examination. Dr. Buck then reviewed DOC records, Department of Human Services records, and police reports pertaining to respondent. Dr. Buck's records review included Dr. Schaab's report. Dr. Buck testified to the nature of respondent's sexually violent offenses and other relevant criminal history, which she considered in her evaluation of respondent. Dr. Buck also considered respondent's history of fights with other inmates, and she testified that those fights did not happen when respondent was housed in a maximum security facility, which indicated that his behavior was better in a highly structured environment. According to Dr. Buck, sex offender treatment was available to respondent while he was incarcerated, but he did not follow up on its availability except for attendance at five sessions. Eventually, respondent committed another sex offense while on parole. Dr. Buck attempted to interview respondent again in 2009. Respondent indicated that he did not want to participate, but he stayed in the room with Dr. Buck, talking. Respondent blamed his criminal conduct on his being young and using drugs. According to Dr. Buck, respondent expressed remorse and empathy for his victims "on a superficial level." Dr. Buck testified that his remorse was geared to "look what I have done to myself."

¶ 6 Dr. Buck opined that respondent suffered from mental disorders–paraphilia, major depression, substance abuse in a controlled environment, and antisocial personality disorder. Dr. Buck further opined that the mental disorder of paraphilia predisposed respondent to commit acts of sexual violence, which made him dangerous. Dr. Buck performed a risk assessment using various actuarial tools. Her opinion was that respondent's risk of reoffending was "quite high." She highlighted that respondent had not participated in sex offender treatment, that his belief that he would not reoffend was unfounded, and that he exhibited psychopathy. She explained that psychopaths do not reduce their criminal activity as they get older but continue to be as criminally oriented and as violent and aggressive as they have been in the past. Dr. Buck opined that it was "substantially probable" that respondent would reoffend.

¶ 7 Dr. Ray Quackenbush, a licensed clinical psychologist, performed an evaluation of respondent on behalf of the Department of Human Services following the trial court's finding of probable cause on the State's petition to have respondent found a sexually violent person. Dr. Quackenbush did a records review, including a review of Dr. Schaab's report. Dr. Quackenbush then attempted to interview respondent, who declined to speak with him. Dr. Quackenbush testified in detail to respondent's criminal offenses, as evidenced in various police reports. According to Dr. Quackenbush, respondent suffered from a number of mental

disorders, including paraphilia, substance abuse, and personality disorder with antisocial features. Dr. Quackenbush testified that paraphilia, which manifests itself in deviant sexual behavior, is a permanent condition that requires treatment. Dr. Quackenbush opined that the paraphilia predisposed respondent to commit future acts of sexual violence. Dr. Quackenbush testified that respondent's refusal to submit to treatment and an incident in which respondent exposed himself to female staff while incarcerated were significant. Using actuarial tools, Dr. Quackenbush opined that respondent was very likely to reoffend.

¶ 8 Following a stipulation that the offenses for which respondent was convicted and sentenced to DOC were sexually violent offenses, the State rested. Respondent presented the testimony of Dr. Luis Rosell, a licensed clinical psychologist and forensic psychologist. Initially, Dr. Rosell was hired by the Lake County public defender's office to evaluate respondent with respect to the State's petition to have respondent civilly committed as a sexually violent person. In his first report, dated November 24, 2002, Dr. Rosell diagnosed respondent with paraphilia. However, in later reports, Dr. Rosell rescinded that diagnosis based upon what he perceived as a "controversy" over the use of the diagnosis. In addition to reviewing records, Dr. Rosell personally interviewed respondent on multiple occasions. Dr. Rosell opined that respondent did not have paraphilia or that, if he did, at the time of trial he no longer suffered from that condition, because respondent had not exhibited any deviant behaviors over the past 20 years of incarceration. According to Dr. Rosell, it was not "substantially probable" that respondent would engage in future sexually violent conduct.

¶ 9 Respondent testified in his own behalf. He testified that he was 53 years old. His mother was a "professional call girl," and his grandparents raised him until they died, after which respondent was "in and out" of foster homes. Respondent admitted that he committed both offenses for which he was sentenced to DOC. He testified that he had a "care-free attitude" then and that "nothing [mattered] except for what [he] wanted." Respondent testified that he had "remorse in [his] heart." He explained that he was using drugs at the times of the offenses. Respondent testified that he did not plan the sexual assaults, but he put himself in the wrong places at the wrong times. When he was trapped in a riot in Stateville, he saw that he had to respect others if he wanted respect. According to respondent, he took a lot of classes "that are not on the record," like an anger management class. Respondent testified that he came into contact with women as a trustee in DOC and that he never sexually attacked anyone. He denied that he had exposed himself. He testified that Michael Jordan was his "mentor" and that he wanted a chance to put his life back together. On cross-examination, respondent admitted that he never received sex offender treatment. He denied that he would benefit from treatment.

¶ 10 The jury found respondent to be a sexually violent person. Following a dispositional hearing, the trial court determined that conditional release was inappropriate. After the trial court denied respondent's motion to reconsider, respondent filed a timely appeal.

¶ 11                                                    ANALYSIS

¶ 12 Respondent raises three issues. First, he argues that the trial court erred in allowing the State to obtain Dr. Buck's evaluation. Second, he asserts that the State failed to prove him

-4-

to be a sexually violent person beyond a reasonable doubt. Third, he contends that the court erred when it failed to place him on conditional release.

¶ 13    The Act permits the State to extend the incarceration of criminal defendants beyond the time they would otherwise be released if they are found to be "sexually violent persons." *In re Detention of Hayes*, 321 Ill. App. 3d 178, 186 (2001). A "sexually violent person" is, *inter alia*, one who has been convicted of a sexually violent offense and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence. 725 ILCS 207/5(f) (West 2002); *Hayes*, 321 Ill. App. 3d at 186. After the State files a petition, the court must hold a hearing to determine whether probable cause exists to believe that the person is a sexually violent person. 725 ILCS 207/15(c) (West 2002); *In re Detention of Welsh*, 393 Ill. App. 3d 431, 445 (2009). If the court determines that probable cause exists, it must order the individual to be taken into custody and transferred to an appropriate facility for an evaluation as to whether the individual is a sexually violent person. 725 ILCS 207/30(b) (West 2002); *Welsh*, 393 Ill. App. 3d at 445. At trial on the petition, the State must prove the petition's allegations beyond a reasonable doubt. 725 ILCS 207/35(d) (West 2002); *Welsh*, 393 Ill. App. 3d at 445. Section 35(b) of the Act provides in part that the State may present expert testimony from both the DOC evaluator and the Department of Human Services psychologist. 725 ILCS 207/35(b) (West 2002).

¶ 14    Here, Dr. Schaab, a DOC psychologist, performed the evaluation of respondent that supported the State's original petition, and Dr. Schaab testified at the probable cause hearing. After the court found probable cause, the case remained pending for a long period of time. (The record shows that respondent's case was consolidated with other similar cases for the purpose of pretrial motions, which contributed to numerous delays.) During the passage of time, Dr. Schaab retired and moved out of state. The State moved to have Dr. Buck, another DOC psychologist, furnish an evaluation, and respondent objected on the ground that section 35(b) permits the State only one evaluation each from DOC and the Department of Human Services.

¶ 15    On appeal, respondent contends that the practical effect of allowing Dr. Buck to evaluate him was that the State had the advantage of three psychologists "to testify" at trial, while respondent had one. The question is whether section 35(b) of the Act restricts the State to two evaluations. The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *Welsh*, 393 Ill. App. 3d at 445. The most reliable indicator of legislative intent is the language of the statute. *Welsh*, 393 Ill. App. 3d at 445. Statutory language is to be given its plain and ordinary meaning. *Welsh*, 393 Ill. App. 3d at 445. Statutory construction presents a legal question subject to *de novo* review. *In re Detention of Hardin*, 238 Ill. 2d 33, 40 (2010).

¶ 16    Section 35(b) governs the trial on the State's petition to adjudicate a sexually violent person. It provides as follows:

"At the trial on the petition it shall be competent to introduce evidence of the commission by the respondent of any number of crimes together with whatever punishments, if any, were imposed. *The petitioner may present expert testimony from both the Illinois*

-5-

*Department of Corrections evaluator and the Department of Human Services psychologist.*" (Emphasis added.) 725 ILCS 207/35(b) (West 2002). The plain language of section 35(b) speaks to the testimony the State may present at trial, not the number of evaluations it may obtain, by providing that the petitioner may present expert testimony from both the DOC evaluator and the Department of Human Services psychologist. Nothing in the language of this section or any other section of the statute prohibits the State from obtaining more than two evaluations. Thus, respondent's argument that Dr. Schaab was not unavailable for trial is not pertinent. Because the statute did not limit the State to using Dr. Schaab's evaluation, the State was not obliged to call Dr. Schaab as a witness even if he was available. Furthermore, the State did not have three evaluators testify at trial. Dr. Buck testified that she reviewed Dr. Schaab's report, but in her direct testimony Dr. Buck did not elaborate on any of Dr. Schaab's findings. The only references to Dr. Schaab's findings were elicited by defense counsel on cross-examination of the State's witnesses.

¶ 17        Respondent relies on *In re Detention of Kortte*, 317 Ill. App. 3d 111 (2000), for his argument that due process required respondent to have equal "expert ammunition" to present to the jury. Under the version of the Act then in place, the respondent in *Kortte* was prohibited from introducing any expert testimony in his own behalf because he had refused to cooperate with the State's evaluation. *Kortte*, 317 Ill. App. 3d at 116. This court declined to hold the statute unconstitutional on its face, but held that a respondent should be allowed to counter the State's evidence with evidence of "equal quality." *Kortte*, 317 Ill. App. 3d at 118. In our case, respondent presented the expert testimony of Dr. Rosell, who had the advantage of multiple personal interviews with respondent, something the State's experts did not have. Thus, respondent was not deprived of evidence of an "equal quality" with the State's evidence. Respondent admits this in his reasonable-doubt argument, where he maintains that Dr. Rosell was more credible than the State's experts because Dr. Rosell had personal access to respondent. Respondent is now contending that *Kortte* requires something more than equal quality, that being equal quantity. However, *Kortte* does not stand for that proposition. Moreover, the Act did not restrict respondent to one expert. Section 25(e) provides that a respondent may retain "experts" or "professional persons" to perform an examination. 725 ILCS 207/25(e) (West 2002). At no time did respondent request the appointment of additional experts, although he could have. Accordingly, the trial court did not err in allowing Dr. Buck to perform an additional evaluation of respondent.

¶ 18        Respondent's second argument is that the State failed to prove beyond a reasonable doubt that he was a sexually violent person. Our standard of review is whether, after viewing all of the evidence in the light most favorable to the State, any rational trier of fact could find that the elements have been proved beyond a reasonable doubt. *In re Detention of Tittlebach*, 324 Ill. App. 3d 6, 11 (2001). Under the Act, the State is required to prove that (1) respondent had been convicted of a sexually violent offense; (2) he would be discharged from DOC within 90 days; (3) he has a mental disorder; and (4) he is dangerous to others because the mental disorder creates a substantial probability that he will engage in future acts of sexual violence. *Tittlebach*, 324 Ill. App. 3d at 11. Here, respondent stipulated that he had been convicted of sexually violent offenses, and he did not challenge that he would be

-6-

discharged within 90 days. Respondent's sole contention is that the State failed to prove that he suffered from a mental disorder that created a substantial probability that he will engage in future acts of sexual violence. Respondent relies solely on the testimony of his expert, Dr. Rosell, who initially diagnosed respondent with paraphilia but subsequently rescinded the diagnosis. Respondent argues that paraphilia requires that the person suffer from recurrent and intense sexual urges, feelings, and behavior for a period of six months, and respondent had been incarcerated for 20 years without any evidence of deviant thoughts or behavior. This argument ignores the testimony of the State's two psychologists and the evidence that respondent had exposed himself while incarcerated. Dr. Quackenbush testified that paraphilia is like diabetes; it does not go away, although it can be controlled with treatment. The record is clear that respondent refused to avail himself of sex offender treatment while incarcerated. Dr. Buck testified that respondent is a psychopath whose criminality would not diminish with age. Additionally, the State presented evidence that respondent engaged in fights unless he was confined in maximum security, indicating that without such structure respondent would not be law-abiding. That respondent had not sexually assaulted any women during his period of incarceration was likely a result of the incarceration itself. Under these facts, we conclude that a rational trier of fact could have found beyond a reasonable doubt that respondent was a sexually violent person.

¶ 19    Respondent's last argument is that the trial court erred when it failed to place respondent on conditional release. Section 40(b)(2) of the Act provides that a person adjudicated as a sexually violent person may be confined to receive institutional care in a secure facility or released from confinement subject to conditions. *In re Detention of Lenczycki*, 405 Ill. App. 3d 1041, 1050 (2010). In making this determination, the trial court must consider: "(1) the nature and circumstances of the behavior that was the basis of the allegation[s] in the petition for adjudication as a sexually violent person; (2) the person's mental history and present mental condition; (3) where the person will live; (4) how the person will support himself or herself; and (5) what arrangements are available to ensure that the person has access to and will participate in necessary treatment." (Internal quotation marks omitted.) *Lenczycki*, 405 Ill. App. 3d at 1050. The Act does not mandate that the trial court choose the "least restrictive" alternative. *Lenczycki*, 405 Ill. App. 3d at 1051. Whether to grant conditional release is matter of the trial court's discretion. *Lenczycki*, 405 Ill. App. 3d at 1051.

¶ 20    Here, respondent's sole argument for why the trial court abused its discretion in failing to grant conditional release is that respondent committed no sexual infractions during his period of incarceration, which is not accurate. The evidence showed that respondent was disciplined for exposing himself. Respondent does not address the statutory factors. Specifically, respondent does not address the two concerns raised by the trial court. The trial court emphasized that respondent would have no support system other than a conditional release officer should respondent be placed on conditional release. The trial court highlighted that a successful support system is family, "people that are going through recovery with [respondent]." The trial court concluded that such a support system "unfortunately for [respondent] doesn't exist." The larger concern expressed by the trial court was respondent's antipathy toward treatment. The trial court commented that respondent "minimized treatment without ever having availed himself of that treatment." The trial court termed it

"provocative" that respondent "testified he doesn't see anything beneficial there [in treatment] for him." Additionally, the evidence showed that respondent was 53 years old with no employment skills. We cannot say that the trial court abused its discretion in denying conditional release.

¶ 21 For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 22 Affirmed.