2018 IL App (4th) 170404
NO. 4-17-0404

FILED
April 16, 2018
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* COMMITMENT OF LAWRENCE LINGLE | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Macoupin County |
| Petitioner-Appellee, | ) | No. 04MR06 |
| v. | ) | |
| Lawrence Lingle, | ) | Honorable |
| Respondent-Appellant). | ) | Joshua Meyer, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices DeArmond and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1    In 1966, respondent, Lawrence Lingle, was convicted of rape. In 1982, respondent

was convicted of rape and deviate sexual assault. In February 2004, shortly before respondent's

prison term ended, the State filed a sexually violent person petition against respondent. See 725

ILCS 207/15 (West 2004). From February 2004 to April 2015, this matter did not proceed to trial

because of delays that were caused or approved by respondent.

¶ 2    In April 2015, respondent filed a motion seeking the appointment of a second

expert witness. Respondent argued that a second expert witness was necessary because the State

would be using two expert witnesses. In May 2015, the trial court denied this motion.

¶ 3    In April 2017, respondent filed a motion *in limine*. Because respondent conceded

that he was convicted of a sexually violent offense, he sought to prevent the State from

mentioning the underlying facts of his convictions during opening statements. Later that month,

the trial court denied this motion.

¶ 4        Later in April 2017, the jury found respondent to be a sexually violent person. In May 2017, the trial court ordered that respondent remain in the custody of the Department of Human Services until he is no longer a sexually violent person.

¶ 5        Respondent appeals, arguing that the trial court erred by (1) denying his request for an additional expert witness and (2) denying his motion *in limine*. Respondent also argues that the jury's verdict was "against the manifest weight of the evidence." We disagree and affirm.

¶ 6        I. BACKGROUND

¶ 7        A. The Sexually Violent Person Petition

¶ 8        In 1966, respondent was convicted of rape. In that case, respondent broke into a residence, threatened a woman with a knife, and raped her. The trial court sentenced defendant to 10 to 30 years in prison.

¶ 9        In 1982, respondent was convicted of rape and deviate sexual assault. In that case, respondent broke into a family's home, threatened the family with a knife, tied them up, raped the mother, raped her 16-year-old daughter, and raped a developmentally disabled adult. The trial court sentenced defendant to 40 years in prison.

¶ 10        In August 2002, respondent was placed on mandatory supervised release. Less than a month later, respondent's supervised release was revoked because he sexually assaulted his elderly and blind relative.

¶ 11        In February 2004, shortly before respondent's prison term ended, the State filed a sexually violent person petition against respondent. See *id.* From February 2004 to April 2015, this matter did not proceed to trial because of delays that were caused or approved by

respondent.

¶ 12                                    B. The Relevant Procedural History

¶ 13                          1. *The Motion for a Second Expert Witness*

¶ 14            In April 2015, respondent filed a motion seeking the appointment of a second

expert witness, contending that a second expert witness was required because the State would be

using two expert witnesses. In May 2015, the trial court denied this motion.

¶ 15                                  2. *The Motion* in Limine

¶ 16            In April 2017, respondent filed a motion *in limine* that sought to prevent the State

from mentioning the underlying facts of his convictions during opening statements. Respondent

noted that the State was required to prove beyond a reasonable doubt that (1) he was convicted of

a sexually violent offense, (2) he has a mental disorder, and (3) the mental disorder makes it

substantially probable that he will engage in acts of sexual violence. 725 ILCS 207/5(f) (West

2016). Respondent conceded that he was convicted of a sexually violent offense and argued that,

because he conceded this first element, the only purpose of mentioning the underlying facts

would be to inflame the passions of the jury and deny him a fair trial. In April 2017, the trial

court denied his motion.

¶ 17                                      C. The Jury Trial

¶ 18            In April 2017, respondent's case proceeded to a jury trial. During opening

statements, the State previewed the expected testimony of its two expert witnesses. This preview

included an in-depth discussion of the underlying facts of respondent's criminal convictions.

¶ 19                                    1. *The State's Evidence*

¶ 20            The State introduced into evidence respondent's convictions for deviate sexual

assault and rape. The State also introduced the expert testimony of Dr. Melissa Weldon-Padera

and Dr. David Suire.

¶ 21        Weldon-Padera, a clinical psychologist and sex offender evaluator, testified to a reasonable degree of psychological certainty that respondent was a sexually violent person. She diagnosed respondent with the mental disorder of being sexually aroused by nonconsenting persons. She further testified that this condition made it substantially probable that respondent would commit future acts of sexual violence. Weldon-Padera testified there was no medical evidence supporting respondent's claim that he was unable to maintain an erection.

¶ 22        She based her conclusions on respondent's offense history, police reports, court records, medical records, victim statements, and other government records. Weldon-Padera especially relied upon the violent nature of respondent's previous crimes. For example, Weldon-Padera testified that she relied upon respondent's 1966 conviction for rape in which he "broke into the victim's home, confined or held her against her will, threatened her with a knife, struck and beat her on the head and body, tied her up, tied her to the bed, cut off her clothing and raped her." She also relied on his 1982 convictions for rape and deviate sexual assault in which he broke into a home, confined three women against their will, gagged them, threatened them with a knife, and raped them. Weldon-Padera further relied upon respondent's admission to deviate sexual assault where he choked and raped a fellow inmate. Weldon-Padera testified that she relied upon respondent's violent sexual history "[b]ecause research shows that a history of sex offending is an important factor in sexual recidivism, and also shows [an] overall pattern of sex offending behavior over time."

¶ 23        The State then introduced the expert testimony of Suire, a clinical psychologist and a sex offender evaluator. Suire testified to a reasonable degree of psychological certainty that respondent was substantially probable to commit future acts of sexual violence. Suire diagnosed

respondent with (1) "specified paraphilic disorder, sexually attracted to non-consenting males and females in a controlled setting" and (2) antisocial personality disorder. Suire testified that these disorders made it substantially probable that respondent would engage in future acts of sexual violence.

¶ 24　　　　In forming his opinion, Suire especially relied upon respondent's criminal and medical history. Suire took particular notice that respondent committed several violent offenses at a young age, was accused of raping individuals while in jail, and sexually assaulted individuals while on supervised release. For example, Suire testified that he relied upon respondent's 1966 conviction where he "apparently picked a home at random, entered the home with a knife, tied the woman in the home up, *** and proceeded to sexually assault her." Suire also considered respondent's 1982 conviction where he broke into a family's home, raped the mother, raped a 16-year-old girl, and raped a 21-year-old disabled adult. Suire found it particularly relevant that respondent tied up his victims and threatened them with a knife. Suire further testified that he also considered other events such as respondent's rape of a fellow prisoner.

¶ 25　　　　Suire further testified that respondent's advanced age and physical health were not protective factors because of his history of seeking vulnerable victims. He testified that respondent's claim that he could no longer maintain an erection was not a mitigating factor.

¶ 26　　　　　　　　　　　　　　　2. *The Respondent's Evidence*

¶ 27　　　　Respondent introduced the expert testimony of Dr. Luis Rosell, a forensic psychologist. Rosell testified that he did not diagnose respondent with a mental disorder. Rosell further testified that respondent was no longer a sexually violent person. In reaching this conclusion, Rosell relied upon respondent's advanced age and his claim that he could no longer

maintain an erection.

¶ 28                                D. The Jury's Verdict

¶ 29        In April 2017, the jury found respondent to be a sexually violent person, and in

May 2017, the trial court ordered that respondent remain in the custody of the Department of

Human Services until he is no longer a sexually violent person.

¶ 30        This appeal followed.

¶ 31                                II. ANALYSIS

¶ 32        Respondent appeals, arguing that the trial court erred by (1) denying his request

for an additional expert witness and (2) denying his motion *in limine*. Respondent also argues

that the jury's verdict was "against the manifest weight of the evidence." We address these

arguments in turn.

¶ 33                          A. The Number of Expert Witnesses

¶ 34        Respondent argues that the trial court erred by denying his motion for a second

expert witness. Respondent argues a second expert witness was necessary because the State had

two expert witnesses. We disagree.

¶ 35                            1. *The Applicable Statute*

¶ 36        The Sexually Violent Persons Commitment Act (Act) states that "[w]henever the

person who is the subject of the petition is required to submit to an examination under this Act,

he or she may retain experts or professional persons to perform an examination." 725 ILCS

207/25(e) (West 2016). The Act further provides as follows:

> "If the person is indigent, the court shall, upon the person's request, appoint a
>
> qualified and available expert or professional person to perform an examination.
>
> Upon the order of the circuit court, the county shall pay, as part of the costs of the

action, the costs of a court-appointed expert or professional person to perform an examination and participate in the trial on behalf of an indigent person." *Id.*

¶ 37                                    2. *The Right to an Expert Witness*

¶ 38        A denial of funds for an indigent respondent to secure an expert witness may violate constitutional protections in certain circumstances. *People v. Lawson*, 163 Ill. 2d 187, 220, 644 N.E.2d 1172, 1187-88 (1994). These protections are triggered when the expertise sought goes "to the heart of the defense." (Internal quotation marks omitted.) *People v. Keene*, 169 Ill. 2d 1, 7, 660 N.E.2d 901, 905 (1995). For a respondent to be entitled to an expert witness, he must show that the requested expert assistance is necessary in proving a crucial issue in the case and that the lack of funds for the expert will therefore prejudice him. *Lawson*, 163 Ill. 2d at 221. An indigent respondent is not entitled to an expert merely because the expert would be useful, helpful, valuable, or important to the defense. *People v. Shelton*, 401 Ill. App. 3d 564, 575, 929 N.E.2d 144, 156 (2010).

¶ 39        A respondent is not entitled to the same number of expert witnesses as the State. *In re Commitment of Brown*, 2012 IL App (2d) 110116, ¶ 17, 971 N.E.2d 612. This court reviews a trial court's denial of a motion for an expert witness for an abuse of discretion. *People v. Page*, 193 Ill. 2d 120, 153, 737 N.E.2d 264, 282 (2000).

¶ 40                                    3. *The Facts of this Case*

¶ 41        In this case, the trial court appointed one expert witness for respondent. Doing so was in compliance with the Act. 725 ILCS 207/25(e) (West 2016). This expert, Rossell, testified about the key issues of the case. See *Lawson*, 163 Ill. 2d at 221. For example, Rosell testified that he did not diagnose respondent with a mental disorder and that respondent was not substantially probable to commit future acts of sexual violence. Additionally, Rosell questioned

the reasoning of Weldon-Padera and Suire. Rosell's testimony was consistent with respondent's cross-examination of the State's experts. If the jury believed Rosell's testimony, it would not have found respondent to be a sexually violent person.

¶ 42 Although an additional expert witness may have been helpful, the State was not required to finance this assistance. *In re Detention of Allen*, 331 Ill. App. 3d 996, 1004, 772 N.E.2d 354, 361 (2002); *In re Ottinger*, 333 Ill. App. 3d 114, 123, 775 N.E.2d 203, 211 (2002) (sex offender filing petition for conditional release from his civil commitment was not denied due process when the State had two expert witnesses and petitioner was only provided one expert witness); see also Hon. Ron Spears, *What Price [is] Justice? The County Board Wants To Know*, 99 Ill. B.J. 260, 260-61 (2011) (discussing factors that trial judges consider when presented with requests from the parties that will lead to county expenses). As earlier noted, the State is not required to provide an indigent respondent with the same *number* of expert witnesses as the State intends to use at trial. *Brown*, 2012 IL App (2d) 110116, ¶ 17.

¶ 43 Accordingly, we conclude that the trial court's denial of respondent's request for a second expert witness was not an abuse of discretion. *Page*, 193 Ill. 2d at 153.

¶ 44 B. The Motion *In Limine*

¶ 45 Respondent argues the trial court erred by denying his motion *in limine* seeking to bar the State from mentioning the underlying facts of his criminal convictions during opening statements. Respondent argues these underlying facts were unfairly prejudicial because he conceded that he was convicted of a sexually violent offense. Further, respondent argues that the "*only purpose*" of mentioning the underlying facts of his convictions was to inflame the passions of the jury. (Emphasis added.) We disagree.

¶ 46                                    1. *The Standard of Review*

¶ 47          A motion *in limine* is addressed to a trial court's power to admit or exclude

evidence or argument. *People v. Stevenson*, 2014 IL App (4th) 130313, ¶ 26, 12 N.E.3d 179.

These motions bring to the trial court's attention potentially irrelevant, inadmissible, or

prejudicial evidence and seek a pretrial order excluding or permitting the evidence. *Id.* The trial

court's evidentiary ruling on a motion *in limine* is reviewed for an abuse of discretion. *People v.*

*Pikes*, 2013 IL 115171, ¶ 12, 998 N.E.2d 1247. An abuse of discretion occurs only when the trial

court's ruling is arbitrary, fanciful, or such that no reasonable person would take the view

adopted by the trial court. *In re Commitment of Kelley*, 2012 IL App (1st) 110240, ¶ 33, 972

N.E.2d 667.

¶ 48                                   2. *The Applicable Case Law*

¶ 49          In *People v. Walker*, 211 Ill. 2d 317, 328, 812 N.E.2d 339, 345 (2004), the State

charged defendant with possession of a weapon by a felon. The primary issue on appeal was

whether the trial court abused its discretion by allowing the State to present evidence of the name

and nature of defendant's prior conviction when a stipulation was available. In that case, the

Illinois Supreme Court held that

> "when proving felon status is the *only purpose* for admitting evidence of a defendant's
>
> prior convictions, and the defendant offers to stipulate or admit to his prior felon status, a
>
> trial court abuses its discretion when it admits the defendant's record of conviction, thus
>
> informing the jury of the name and nature of the defendant's prior convictions."
>
> (Emphasis added.) *Id.* at 338.

¶ 50          In *Kelley*, the respondent appealed the jury's finding that he was a sexually

violent person under the Act, arguing that "the trial court erred by denying his motion *in limine*

to stipulate to his prior convictions for sexually violent offenses and to preclude the State from referring to the name of those convictions." *Kelley*, 2012 IL App (1st) 110240, ¶ 32. The respondent argued that his case was analogous to the facts of *Walker* and that he was unfairly prejudiced by allowing the State to discuss and elicit testimony regarding the names and nature of his prior convictions. See *id.* ¶ 34.

¶ 51        The First District concluded that *Walker* was distinguishable, noting that "the State had *multiple purposes* for eliciting this testimony," such as (1) proving that respondent had been convicted of one or more specifically listed offenses and (2) allowing its expert witnesses to explain the basis of their opinions. (Emphasis added.) *Id.* ¶ 38. Accordingly, the court concluded that "the stipulation defendant sought in his motion *in limine* would not have served the same purpose as testimony regarding his prior convictions, and we find nothing improper in the testimony of the State's expert witnesses in this regard." *Id.*

¶ 52                            3. *The Facts of this Case*

¶ 53        We agree with the First District's analysis in *Kelley* and deem it applicable to the facts of this case. *Id.* ¶¶ 32-39. Opening statements are intended to explain to the jury what the parties intend to prove at trial, outline the expected evidence, and discuss reasonable inferences from the expected evidence. *Klingelhoets v. Charlton-Perrin*, 2013 IL App (1st) 112412, ¶ 29, 983 N.E.2d 1095; *People v. Arroyo*, 339 Ill. App. 3d 137, 149, 790 N.E.2d 943, 954 (2003). The primary function of opening statements is to provide notice to the jury, to explain the factual context of a case, and to assist them in their fact-finding role. See *Arroyo*, 339 Ill. App. 3d at 149.

¶ 54        At trial, the State's expert witnesses concluded that it was substantially probable that respondent would engage in future acts of sexual violence. In so concluding, both experts

relied upon the underlying facts of respondent's prior convictions. It is well settled that expert witnesses may "properly testify to facts upon which [their] opinion is based." *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 604-05, 884 N.E.2d 160, 179 (2007). Moreover, details of a respondent's prior sexual offenses are probative of (1) the diagnosis of a mental disorder and (2) the determination that it is substantially probable that the respondent will commit further acts of sexual violence. *In re Detention of Hardin*, 391 Ill. App. 3d 211, 219-20, 907 N.E.2d 914, 921 (2009); *Allen*, 331 Ill. App. 3d at 1005; *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 1089-90, 740 N.E.2d 1146, 1159 (2000).

¶ 55 During opening statements, the State may outline the expected testimony of its expert witnesses. *People v. Kliner*, 185 Ill. 2d 81, 127, 705 N.E.2d 850, 874 (1998). This outline may include a preview of the underlying facts of a respondent's sexually violent offenses so that the jurors are provided proper context.

¶ 56 Accordingly, the State had *multiple purposes* for discussing the underlying facts of respondent's convictions during opening statements. These purposes included (1) previewing the testimony of its expert witnesses, (2) providing context to the jury, and (3) suggesting reasonable inferences to draw from this expected evidence. See *Kelley*, 2012 IL App (1st) 110240, ¶ 38. Respondent's concession that he committed a sexually violent offense would not have served the same purpose as discussing the underlying facts of his sexually violent offenses during opening statements. Accordingly, we conclude that the trial court did not abuse its discretion when denying respondent's motion *in limine* seeking to bar these statements. *Id.* ¶¶ 32-39.

¶ 57 As a last matter on this issue, we note the peculiarity of respondent's complaint (first to the trial court and then on appeal) about an opening statement that (he concedes) is

- 11 -

consistent with the evidence the State intends to present and—in fact—later does present. We are aware of no case that has ever provided any support to respondent's claim that he somehow is entitled to have the jury hear about this evidence first from the witness stand and not from the opening statement.

¶ 58                                    C. The Jury's Verdict

¶ 59            Respondent further argues that the jury's verdict was "against the manifest weight of the evidence." We disagree.

¶ 60                         1. *The Applicable Law and the Standard of Review*

¶ 61            To prove that an individual is a sexually violent person, the State must prove that (1) an individual was convicted of a sexually violent offense, (2) the individual has a mental disorder, and (3) the mental disorder makes it substantially probable that he will engage in acts of sexual violence. 725 ILCS 207/5(f) (West 2016).

¶ 62            We first note that respondent has set forth an improper standard of review. See *In re Detention of Sveda*, 354 Ill. App. 3d 373, 380, 820 N.E.2d 987, 993 (2004) (concluding that "manifest weight of the evidence" was the improper standard of review under the Act). When a respondent appeals a finding that he is a sexually violent person, a reviewing court considers whether any rational trier of fact, when viewing the evidence in the light most favorable to the State, could find the elements of the Act beyond a reasonable doubt. *In re Commitment of Hardin*, 2013 IL App (2d) 120977, ¶ 22, 997 N.E.2d 655; *Sveda*, 354 Ill. App. 3d at 380. We defer to the fact finder's assessment of the credibility of the witnesses, resolution of conflicts in the evidence, and reasonable inferences from the evidence. *In re Detention of Welsh*, 393 Ill. App. 3d 431, 455, 913 N.E.2d 1109, 1129 (2009).

¶ 63                                    2. *This Case*

¶ 64          In this case, the State introduced respondent's prior convictions for sexually violent offenses, and respondent conceded he had committed those crimes. The State then introduced the expert testimony of Weldon-Padera and Suire. Weldon-Padera testified to a reasonable degree of psychological certainty that respondent was a sexually violent person. She based this conclusion on respondent's offense history, police reports, court records, prior evaluations, victim statements, and other government records. She especially relied upon the violent nature of respondent's previous crimes.

¶ 65          Weldon-Padera diagnosed respondent as being sexually aroused by non-consenting persons and stated that this condition made it substantially probable that respondent would commit future acts of sexual violence. Weldon-Padera further testified that there was no medical evidence supporting respondent's claim that he was unable to maintain an erection.

¶ 66          Suire testified that he reviewed respondent's criminal history, medical history, and prior evaluations. In forming his opinion, Suire took particular notice that respondent committed several violent offenses at a young age, was accused of raping individuals while in jail, and sexually assaulted individuals while on supervised release. Suire testified to a reasonable degree of psychological certainty that respondent was substantially probable to commit future acts of sexual violence. He testified that respondent's advanced age and physical health was not a protective factor because of his history of seeking vulnerable victims. He testified that respondent's claim that he could no longer maintain an erection was not a mitigating factor.

¶ 67          Respondent presented the expert testimony of Rosell, who testified that he did not diagnose respondent with a mental disorder and that respondent was not a sexually violent person. In reaching this conclusion, Rosell relied upon respondent's advanced age and

- 13 -

respondent's claim that he could no longer maintain an erection.

¶ 68       The jury, rather than this court, was called upon to resolve conflicts in the evidence and to weigh the credibility of the witnesses. *Id.* When viewing all of evidence in the light most favorable to the State, we conclude that a reasonable jury could find the elements of the Act beyond a reasonable doubt. *Hardin*, 2013 IL App (2d) 120977, ¶ 22.

¶ 69                              III. CONCLUSION

¶ 70        For the reasons stated, we affirm the trial court's judgment.

¶ 71       Affirmed.