2022 IL App (1st) 151075-U

SIXTH DIVISION
February 18, 2022

Nos. 1-15-1075 and 1-18-2630 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| *In re* COMMITMENT OF WILLIAM WALLS, | ) |
| | ) Appeal from the |
| (The People of the State of Illinois, | ) Circuit Court of |
| | ) Cook County. |
| Petitioner-Appellee, | ) |
| | ) No. 03 CR 80002 |
| v. | ) |
| | ) Honorable |
| William Walls, | ) Thomas J. Byrne and |
| | ) LeRoy K. Martin, |
| Respondent-Appellant). | ) Judges Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Justices Harris and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the trial court's orders adjudicating respondent a sexually violent person, committing him to the custody of the Illinois Department of Human Services, and denying his motion for discharge from commitment. We also affirm the trial court's order granting the State's motion for a finding that no facts exist to warrant an evidentiary hearing to determine if respondent is still a sexually violent person.

¶ 2    In March 2003, the State petitioned for the involuntary commitment of respondent William Walls as a sexually violent person (SVP) under the Sexually Violent Persons Commitment Act (SVP Act) (725 ILCS 207/1, *et seq.*). This was followed by a 12-year delay during which Mr.

Walls was appointed a series of lawyers but also represented himself for various periods. Finally, there was a bench trial in February 2015 and a dispositional hearing during which Mr. Walls was represented by counsel. He was adjudicated a sexually violent person under the SVP Act and committed to the custody of the Illinois Department of Human Services (IDHS).

¶ 3    In these consolidated appeals, Mr. Walls argues *pro se* that the trial court erred by (1) adjudicating him a sexually violent person (appeal No. 1-15-1075), and (2) three years later denying his motion for discharge from commitment and finding that facts did not exist to warrant an evidentiary hearing on whether he was still a sexually violent person (appeal No. 1-18-2630). For the following reasons, we affirm. The trial court, however, is advised to appoint counsel for Mr. Walls prior to considering any future petition from the State relating to the continuation of his confinement as a sexually violent person. In the event that Mr. Walls seeks to proceed without counsel, the court is advised to hold an evidentiary hearing to assess his competence to waive counsel.

¶ 4                                    I. BACKGROUND

¶ 5    On March 6, 2003, the State filed a petition to adjudicate Mr. Walls a sexually violent person and for an order of commitment. The State alleged that Mr. Walls had been convicted of the aggravated criminal sexual assault of a minor in 1993 and was scheduled for imminent release from prison. Mr. Walls had been diagnosed with several mental disorders, including antisocial personality disorder, borderline intellectual functioning, and "Paraphilia, Not Otherwise Specified, Non-[C]onsenting Persons, Females Alcohol Abuse, In a Controlled Environment," which, according to the State, created a substantial probability that he would commit future acts of sexual violence. The petition also alleged that Mr. Walls exhibited a "pervasive pattern of denial and lack of empathy for his victims."

¶ 6    The State attached a report by Dr. Jacqueline Buck, dated January 23, 2003, stating that Mr. Walls also had six adjudications of juvenile delinquency for battery, five of which involved sexual violence. Dr. Buck concluded that Mr. Walls had committed violent sexual acts as both a juvenile and as an adult, that he suffered from mental disorders that made it substantially probable he would reoffend, and that he was a candidate for commitment as a sexually violent person. On March 10, 2003, the court found probable cause for IDHS to take custody of Mr. Walls as an SVP.

¶ 7    The record of court-reported hearings from 2003, when the SVP petition was filed, until 2015, when the trial was finally held, is obviously missing transcripts from a number of court dates. However, from the transcripts that are part of the record, it is clear that Mr. Walls represented himself at various times and at other times lawyers were appointed to represent him. It is also clear from the transcripts that are part of the record that much of the delay resulted from Mr. Walls's requests for more time to file and prepare for arguments on various motions during periods that he was representing himself. As just one example, on November 12, 2003, Mr. Walls first presented his motion to bar consideration of his juvenile adjudications, which was denied. He was representing himself at that time and told the judge that he wanted to continue to do so. At the conclusion of that hearing, he told the court that he wanted to file more motions, and when the court said that it would give him 30 days, he said, "No, give me more time." On January 22, 2004, again representing himself, Mr. Walls asked that the State's petition be dismissed because it relied on juvenile adjudications. That motion was also denied, and at the end of that hearing, the court appointed Mr. Walls a lawyer. By August 31, Mr. Walls was again representing himself and the following exchange occurred:

"COURT: You have had the services of several attorneys now?

[MR. WALLS]: Yeah.

COURT: None of whom you appear to be able to work with for one reason or another. Do you understand that by not going with the services of an attorney licensed to practice law in the State of Illinois familiar with all the laws governing this Court you are going to be at a disadvantage, sir?

[MR. WALLS]: Yes, ma'am.

THE COURT: Knowing that you still want to go alone?

[MR. WALLS]: Yes, ma'am. ***."

¶ 8    The transcripts that are part of the record reflect both that the court appropriately admonished Mr. Walls of the risks of representing himself on this and various other occasions and that the court continued to appoint counsel for Mr. Walls—either private counsel or the Office of the Cook County Public Defender (Public Defender). The transcripts also show that Mr. Walls filed more motions and repeatedly asked for more time to prepare them. Some of these motions sought a substitution of judge for cause. It appears that all of these motions were denied.

¶ 9    The record also reflects that throughout much of this time, Mr. Walls filed various documents on his own, even when he was represented by counsel, including a petition for *mandamus* and a *habeas* petition. At various other points, Mr. Walls refused transport to come to court hearings.

¶ 10    On March 25, 2013, through his attorney Marc Blesoff, Mr. Walls filed a petition for Dr. Fred Berlin, a professor at The Johns Hopkins University School of Medicine, to be summoned as an out-of-state witness under the Code of Criminal Procedure of 1963 (725 ILCS 220/3 (West 2012)). According to the motion, Dr. Berlin would testify that petitions to adjudicate individuals as sexually violent unfairly rely on confidential information, including admissions to prior offenses, which individuals must provide to IDHS in order to progress through treatment.

According to the motion, Dr. Berlin would further testify that persons committed as SVPs face a catch-22. If they refuse to meet with the doctors, they cannot make progress towards release and if they do meet with them and talk about their sexual activity, that activity can be used to prosecute them criminally or keep them in the custody of IDHS as SVPs. The court denied the motion.

¶ 11    Mr. Blesoff appears from the record to have represented Mr. Walls both as an assistant public defender and as a private attorney, and he filed several motions on his behalf, including one to dismiss the State's petition on the grounds that the clinical information it relied on was stale and Mr. Walls had refused to meet with any doctors for purposes of updating that information.

¶ 12    On January 26, 2015, Mr. Walls appeared, represented by Mr. Blesoff, and waived his right to a jury trial. The bench trial on the State's petition finally commenced on February 9 and 10, 2015. Mr. Walls, still represented by Mr. Blesoff, declined transport to court to attend the trial. Mr. Blesoff notified the court that Mr. Walls wanted the case to go forward and had waived his appearance. Mr. Blesoff also renewed Mr. Walls's objection to the "usage and inclusion" of his juvenile records, on the basis that such records were confidential.

¶ 13    The State called two doctors, who were both found qualified by the court as experts in clinical and forensic psychology in sex offender evaluations. The first was Dr. Allison Schechter, a clinical and forensic psychologist at Wexford Health Services. The second was Dr. Richard Travis, a licensed clinical psychologist employed by IDHS to evaluate sexually violent persons.

¶ 14    Dr. Schechter testified that she had reviewed the police reports and court documents related to Mr. Walls's criminal case and his Illinois Department of Corrections (IDOC) and medical records, including prior psychological evaluations. Dr. Schechter noted that Mr. Walls's juvenile delinquency adjudications and adult convictions both exhibited a pattern of approaching young females, robbing or attempting to rob them, threatening or physically assaulting them, moving

them to secondary locations, forcing them to undress, and sexually assaulting them.

¶ 15    Mental health records from his time spent in juvenile detention described Mr. Walls as "sexually obsessed, sexually dangerous[,] and possessing poor impulse control." According to IDHS records, Mr. Walls's mental health deteriorated in 2006 when he was noted to have exhibited "persecutory thoughts and paranoid ideation." Mr. Walls refused all mental health treatment and medication.

¶ 16    Dr. Schechter's diagnosis for Mr. Walls was "other specified paraphilic disorder, non-consenting females, in a controlled environment." Mr. Walls exhibited a pattern of sexual interest in non-consenting females and sought "satisfaction of this paraphilic interest in a manner that entail[ed] personal harm or risk of harm to others." Dr. Schechter also diagnosed Mr. Walls with antisocial personality disorder reflecting a "pervasive pattern" of violating the rights of others. According to Dr. Schechter, these conditions were mental disorders under the SVP Act. Dr. Schechter determined that there was a substantial probability that Mr. Walls would reoffend and that he thus met the criteria for a sexually violent person.

¶ 17    Dr. Travis testified that Mr. Walls refused to meet with him for this evaluation. He acknowledged on cross-examination that, although he had evaluated Mr. Walls several times, he never actually spoke with Mr. Walls in connection with any of those evaluations. Instead, his evaluations were based on records from IDHS and IDOC, police reports, and past psychiatric evaluations. Dr. Travis also reviewed Mr. Walls's juvenile delinquency adjudications to identify behavioral patterns involving prior acts of sexual violence. Dr. Travis concluded that Mr. Walls exhibited a pattern of forcing young females into isolated locations and sexually assaulting them.

¶ 18    Dr. Travis also reviewed Mr. Walls's adult criminal history to determine whether his pattern of sexual violence continued into adulthood. In 1991, Mr. Walls was convicted of robbery

and sentenced to seven years of imprisonment. The underlying facts fit Mr. Walls's pattern of isolating and sexually assaulting female victims. In 1993, Mr. Walls was convicted of aggravated criminal sexual assault and sentenced to 15 years of imprisonment. In that case, he approached a 13-year-old female, took her to an abandoned garage, and sexually assaulted her. Mr. Walls refused adult sex offender treatment at both IDOC and IDHS.

¶ 19 Dr. Travis diagnosed Mr. Walls with "Other Specified Paraphilic Disorder sexually attracted to nonconsenting females, nonexclusive, in a controlled environment," meaning that he had "recurrent urges" to force females into harmful sexual activity. Dr. Travis also diagnosed Mr. Walls with antisocial personality disorder reflecting a lack of respect for others' rights. In Dr. Travis's opinion, these disorders predisposed Mr. Walls to sexual violence. He concluded that Mr. Walls was "substantially probable" to reoffend and thus met the criteria for commitment as a sexually violent person

¶ 20 In response to the State's case, counsel for Mr. Walls renewed his motion to summon Dr. Fred Berlin. The court said that it agreed with the ruling by the previous judge, who had denied the motion on the basis that the requested testimony would not be relevant. Defense counsel made an offer of proof that Dr. Berlin would testify that he had been found qualified as an expert in identifying and treating sexual disorders, that IDHS's treatment program requires patients both to waive confidentiality regarding alleged sexual offenses and to admit culpability, and that consequently, service providers could potentially function as informants. Dr. Berlin would further testify that the actuarial method that Drs. Schechter and Travis used to evaluate Mr. Walls's risk of future sexual violence was invalid.

¶ 21 Mr. Walls elected not to testify at the hearing.

¶ 22 On February 20, 2015, the trial court adjudicated Mr. Walls a sexually violent person. The

court found that the doctors called by the State had established that Mr. Walls suffered from a mental disorder that made it substantially probable he would commit future acts of sexual violence.

¶ 23    The court proceeded immediately to a dispositional hearing, where the parties rested on the evidence presented and the arguments made at the adjudication hearing. The court committed Mr. Walls to the custody of IDHS as an SVP. Defense counsel filed a motion for a new trial, asserting generally that the State failed to prove beyond a reasonable doubt that Mr. Walls was a sexually violent person and that Mr. Walls's rights to due process and equal protection had been violated. The court denied the motion.

¶ 24    The record reflects that on January 31, 2017, and again on February 26, 2018, the State filed a notice of Mr. Walls's periodic examination as required by section 55 of the SVP Act (725 ILCS 207/55 (West 2016)) and moved for a finding by the trial court that no probable cause existed to hold an evidentiary hearing relative to Mr. Walls's release. In both petitions, the State alleged that, although Mr. Walls had refused to meet with him, Dr. Travis had nevertheless evaluated Mr. Walls and concluded that he continued to be an SVP.

¶ 25    Dr. Travis's 2017 and 2018 reports were similar. Both traced Mr. Wall's personal and developmental history, his education and employment history, his mental health and treatment history, his substance abuse and treatment history, and his criminal history. Dr. Travis reported that Mr. Walls had been returned to the IDOC in 2006 for attacking another resident in May 2006 with a mop wringer and his fists and that during his approximately 15-month stay in the custody of the IDOC he was sanctioned for four major rule violations. Dr. Travis also reported that when Mr. Walls was first incarcerated, from 1993 until 2003, he had "an extensive history of institutional rule infractions."

¶ 26    Dr. Travis also reported on Mr. Walls's adjustment and treatment while at IDHS's

treatment and detention facility, where he was held from 2003 until 2006 and again from 2007 forward. Dr. Travis reported that Mr. Walls had not consented to or engaged in treatment while at the IDHS facility.

¶ 27    Both reports included notes from previous reporting periods, when Mr. Walls had reported that staff from the prison and from the IDHS facility were conspiring against him, residents were performing homosexual acts on him, and staff was assaulting him. Mr. Walls also reported that the staff was releasing toxic gases into air. The reports noted that on May 24, 2010, a therapist met with Mr. Walls through his cell door and Mr. Walls said "I told you motherfuckers that I am a pre-trial detainee and I ain't talking to you about any of this shit. I don't talk to any of your therapists." The reports also documented other incidents in which Mr. Walls refused to meet with therapists. Dr. Travis stated that Mr. Walls had not sought psychiatric services since 2011 and that he was prescribed .5 mg. Haloperidol as needed for "agitation."

¶ 28    Dr. Travis's 2017 report noted that in 2016 Mr. Walls was referred to the IDHS facility's behavior committee for refusing a housing assignment. According to the report, Mr. Walls told the committee, in part:

> "My situation, my conditions and living situation being hostile, so I've had to be place [sic] on Fox on Emergency Living status, for my safety. *** Everybody around me is hostile, residents and staff. *** I'm forced to live with individuals who hate me and want to do harm to me. *** like the air conditioner bacteria coming out of there, like putting me in a gas chamber. Other guys, tray porters could put piss in my food from other guys who are infected."

¶ 29    Dr. Travis's 2018 report in turn cited a 2017 report from the IDHS facility's behavior committee noting that Mr. Walls had engaged in a conversation with a female staff member in

which he said that he had not seen her and asked where she had been, and she, perceiving the questions to be too personal, wrote him up. Mr. Walls told the committee that he had meant nothing by that interaction and thought that he and the staff member had been getting along well prior to that interaction. According to the report, Mr. Walls was issued a warning for "Insolence."

¶ 30    In the reports, Dr. Travis's diagnoses were "Other Specified Paraphilic Disorder, Sexually Attracted to Nonconsenting Females, Nonexclusive Type," and "Antisocial Personality Disorder." He assessed Mr. Walls as falling within the highest risk category on several assessments. Dr. Travis found no protective factors that would reduce the risk of re-offense.

¶ 31    At a hearing on May 24, 2018, Mr. Walls appeared in court with his counsel, who at that time was Mark Kusatzky. Mr. Kusatzky informed the court that he had been "representing Mr. Walls for some time now" and that Mr. Walls had sent him a document to which Mr. Kusatzky had suggested certain changes be made, that Mr. Walls had made those changes, and that Mr. Zusatzky had agreed to file the motion on Mr. Walls's behalf. The motion, which is in the record, is handwritten and states that it was filed by Mr. Walls, "through his attorney, Mark Kusatzky." It is titled "Amended Motion to be Immediately Released and Total Discharged." In it, Mr. Walls argued that the State's petition was malicious, lacked probable cause, and relied on Mr. Walls's juvenile records and an alleged "involuntary" confession, and—in reference to Dr. Berlin—that the trial court had denied Mr. Walls the right to present witnesses. The handwritten motion traced Mr. Walls's efforts to file a federal *habeas* petition regarding his confinement and described how he was admonished by the federal court of his need to exhaust state remedies. He attached a decision of the federal district court dismissing his *habeas* petition on this ground.

¶ 32    The September 24, 2018, motion, also filed by Mr. Walls "through his attorney Mark Kusatzky," asked the court to (1) reconsider the denial of his pretrial motion to issue summons for

Dr. Berlin and (2) issue summons for Benjamin Wolf, an attorney for the American Civil Liberties Union (ACLU). The motion alleged that Dr. Berlin had prepared a report for the ACLU regarding IDHS's practices concerning individuals held as SVPs. No report was attached to the motion.

¶ 33    On October 23, 2018, the trial court entered written orders (1) finding no probable cause for an evidentiary hearing based on the 2017 and 2018 petitions filed by the State, (2) continuing Mr. Walls's involuntary commitment, (3) denying Mr. Walls's motion for discharge, and (4) denying the requests for summonses. Although the record on appeal contains no transcript of that day's proceedings, the half sheet indicates that Mr. Walls was represented by Mr. Kusatzky.

¶ 34    On March 16, 2015, a notice of appeal was filed from the trial court's adjudication of Mr. Walls as an SVP (appeal no. 1-15-0888). From this court's docket, it appears that both the Public Defender and a private attorney, Stephen Potts, were appointed at various points to represent Mr. Walls on that appeal. However, no briefs were ever filed, and on November 23, 2016, the appeal was dismissed on this court's own motion for want of prosecution.

¶ 35    A second notice of appeal, filed on March 17, 2015 (appeal no. 1-15-1075), initiated one of the consolidated appeals now before us. However, it does not appear that any action was taken or any attorney appointed to represent Mr. Walls on that appeal until this court, on its own motion, appointed the Public Defender to represent him on May 23, 2019. Following that appointment, the Public Defender filed a docketing statement, the record on appeal, a motion to supplement the record, and three motions for an extension of time to file Mr. Walls's opening brief.

¶ 36    On November 8, 2018, Mr. Walls timely filed a third notice of appeal, this time from the orders of October 23, 2018 (appeal No. 1-18-2630). On February 26, 2020, this court granted the Public Defender's motion to consolidate appeal nos. 1-15-1075 and 1-18-2630.

¶ 37    On March 4, 2020, Mr. Walls filed a motion asking to proceed *pro se* or to have this court appoint other counsel. In that motion, Mr. Walls complained that he had sent the assistant public defender who was assigned to his case a copy of the brief that should be filed long ago and that this was ignored. On March 13, 2020, this court granted the motion and allowed Mr. Walls to proceed *pro se.*

¶ 38    Even before that order had been entered, however, on March 12, 2020, the Public Defender filed a motion to withdraw as counsel. The Public Defender averred that it should be allowed to withdraw because the "statutory duties of the Cook County Public Defender's Office do not include representing defendants in civil commitment proceedings." The motion was granted by this court on March 16, 2020. Since Mr. Walls had already been granted leave to proceed *pro se,* no new counsel was appointed.

¶ 39    Mr. Walls filed his appellant's brief on April 20, 2020, and he has also filed a motion to waive fees (granted), two motions for a restraining order (denied), a motion to supplement the record (granted), a motion for electronic home detention (denied), a motion for default (denied) and a motion to file an objection to the State's second motion for an extension of time (denied). After being granted two extensions, the State filed its appellee's brief on June 11, 2021. Mr. Walls did not file a reply brief.

¶ 40                                II. JURISDICTION

¶ 41    The trial court adjudicated Mr. Walls an SVP on February 20, 2015. On October 23, 2018, it denied his motions for immediate discharge and to reconsider summons of Dr. Berlin as a witness and granted the State's motion for a finding that no probable cause existed for an evidentiary hearing relative to Mr. Walls's release. Mr. Walls filed timely notices of appeal from those orders

on March 17, 2015, and November 8, 2018, respectively. We have jurisdiction over these consolidated appeals pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments entered by the trial court in civil cases.

¶ 42                                    III. ANALYSIS

¶ 43    The SVP Act authorizes the commitment of a sexually violent person until "the person is no longer a sexually violent person." 725 ILCS 207/40(a) (West 2002). A sexually violent person is defined, in relevant part, as an individual convicted of or adjudicated delinquent for a sexually violent offense, including aggravated criminal sexual assault, and who is dangerous due to a mental disorder that makes it substantially probable he will commit sexual violence in the future. 725 ILCS 207/5(f) (West 2002).

¶ 44    The SVP Act applies when an individual convicted of—or, in the case of a juvenile, adjudicated delinquent as a result of—committing a sexually violent offense nears release from custody. *In re Detention of Samuelson*, 189 Ill. 2d 548, 553 (2000). If it is possible that such an individual meets the criteria for commitment as a sexually violent person, the agency with authority to discharge him or her must notify the State before his anticipated release. 725 ILCS 207/10(b) (West 2002). The State may then file a petition alleging the respondent is a sexually violent person. 725 ILCS 207/15(a) (West 2002). The State must prove its allegations beyond a reasonable doubt. 725 ILCS 207/35(d)(1) (West 2002).

¶ 45    A person subject to an SVP petition has some of the same rights as a criminal defendant, including the right to remain silent, the right to counsel, and the right to appointed counsel, if indigent. 725 ILCS 207/25(c) (West 2002). The SVP Act also contains a speedy trial provision, requiring a probable cause hearing within 72 hours if the person is in custody (725 ILCS 207/30(b) (West 2002)) and trial within 120 days of the probable cause hearing, unless the delay is agreed to

by the person subject to commitment (725 ILCS 207/35(a) (West 2002)).

¶ 46    If the circuit court finds the respondent to be a sexually violent person, it must order the respondent to be committed to the custody of IDHS. 725 ILCS 207/40(a) (West 2002). "When a respondent appeals a finding that he is a sexually violent person, a reviewing court considers whether any rational trier of fact, when viewing the evidence in the light most favorable to the State, could find the elements of the Act beyond a reasonable doubt." *In re Commitment of Lingle*, 2018 IL App (4th) 170404, ¶ 62.

¶ 47    After a sexually violent person has been committed, IDHS must submit a written report to the court on the person's mental condition at least once every 12 months. 725 ILCS 207/55(a) (West 2018). A sexually violent person may petition for discharge, in which case the court "shall set a probable cause hearing to determine whether facts exist to believe that since the most recent periodic reexamination *** the condition of the committed person has so changed that he or she is no longer a sexually violent person." 725 ILCS 207/65(b)(1) (West 2018). If the court finds probable cause that the individual is no longer sexually violent, an evidentiary hearing on the issue is required. *Id.* § 65(b)(2).

¶ 48    If the person committed as an SVP has not filed a petition for discharge but has not affirmatively waived the right to petition for discharge, the probable cause hearing following the annual written report by IDHS consists only of a review of the reexamination reports and argument on behalf of the parties. *Id.* § 65(b)(1). The committed person has a right to have an attorney represent him or her at the probable cause hearing, but the person is not entitled to be present at that hearing. *Id.*

¶ 49    Whether the probable cause threshold for an evidentiary hearing was met is generally considered to be an issue of law that we review *de novo*. *In re Commitment of Smego,* 2017 IL

App (2d) 160335, ¶ 23; *In re Detention of Lieberman*, 2011 IL App (1st) 090796, ¶ 40, aff'd *sub nom. In re Detention of Stanbridge*, 2012 IL 112337, ¶ 2; see also *In re Commitment of Kirst*, 2015 IL App (2d) 140532, ¶¶ 48-49 (collecting cases electing to apply the *de novo* standard because "[t]he existence of probable cause is a question of law and becomes a question of fact only if the operative facts are in dispute").

¶ 50    These consolidated appeals include Mr. Walls's challenge to the trial court's judgment on February 20, 2015, adjudicating him to be an SVP and committing him to the custody of IDHS, as well as his challenges to the court's rulings of October 23, 2018, granting the State's 2017 and 2018 petitions to continue to detain Mr. Walls as a sexually violent person without an evidentiary hearing and denying Mr. Walls's May 24 and September 24, 2018, motions. We review Mr. Walls's challenges to these rulings in turn.

¶ 51                    A. Appeal from the 2015 Adjudication of Mr. Walls as an SVP

¶ 52    Mr. Walls's arguments on appeal regarding his initial commitment, while they are a little difficult to discern, clearly include the argument that he repeatedly made at and before his trial: that the State and the doctors who testified in support of the State's petition should not have been allowed to rely on his juvenile adjudications because those are, by law, supposed to be treated as confidential. Mr. Walls also appears to argue that he was improperly denied the right to call Dr. Berlin and Mr. Wolf as trial witnesses. Although we disagree with the State's assertion that Mr. Walls has failed to raise any cogent claim of error, we conclude that Mr. Walls's arguments have no merit.

¶ 53    Mr. Walls is simply wrong in insisting that the State is prohibited from relying on his juvenile adjudications to support a finding that he is an SVP. The SVP Act specifically allows a finding that a person is an SVP based on that person being adjudicated delinquent under the

Juvenile Court Act. The SVP Act is triggered upon: "[t]he anticipated release from [an IDOC] correctional facility or juvenile correctional facility of a person adjudicated delinquent under Section 5-20 of the Juvenile Court Act of 1987 [now repealed] or found guilty under Section 5-620 of that Act, on the basis of a sexually violent offense." 725 ILCS 207/10(b)(2) (West 2002). See also *Samuelson*, 189 Ill. 2d at 553 (noting that "[t]he provisions of the [SVP] Act are triggered when a defendant who has been convicted of a sexually violent offense, *adjudicated delinquent on the basis of a sexually violent offense*, or been found not guilty of a sexually violent offense by reason of insanity is nearing release or discharge from custody.") (Emphasis added).

¶ 54     And to the extent that Mr. Walls argues that the trial court erred in denying his motion to summon Dr. Berlin or to call Mr. Wolf as a witness at trial, he fails to explain how either of them would have offered relevant testimony as to whether he was or was not an SVP. In any event, the trial court has substantial discretion regarding the calling of witnesses. See *Kotvan v. Kirk*, 321 Ill. App. 3d 733, 748, (2001) (noting that a "/trial court has discretion to limit the number of witnesses"). The court does not appear to have abused that discretion in refusing to allow Mr. Walls to present these witnesses.

¶ 55     The first of Mr. Walls's consolidated appeals, appeal No. 1-15-1075 is thus without merit and the trial court's judgment adjudicating him an SVP is affirmed.

¶ 56                    B. Appeal from the Court's 2018 Rulings

¶ 57     As noted above, the transcript of the October 23, 2018, court date is not included in the record on appeal. The handwritten half sheet from that date states that Mr. Walls's two motions, filed on May 24, 2018, and September 24, 2018, respectively, were denied. The record also contains two separate orders from that date granting the State's motions form January 31, 2017, and February 27, 2018, both asking for a finding of no probable cause to hold an evidentiary

hearing. The result of these rulings was, of course, that Mr. Walls remained in IDHS custody.

¶ 58    Mr. Walls's *pro se* notice of appeal in appeal No. 1-18-2630 states simply that he is appealing the judgment dated October 23, 2018. Mr. Walls's brief in this consolidated appeal does not separately address the rulings the court made on that date, and we thus cannot discern which of them he objects to or what basis he might have for an objection.

¶ 59    The State's entire argument on this appeal is that Mr. Walls, as the appellant, must provide a sufficient record to support his claim of error. Citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984), the State argues that, because there is no transcript, this court cannot review the decision of the trial court, must resolve all doubts against Mr. Walls (*id.* at 392), and must "presume that the trial court's order conformed to the law and had a sufficient factual basis" (*Wells Fargo Bank, N.A. v. Hansen*, 2016 IL App (1st) 143720, ¶ 15).

¶ 60    While we agree with the State that the court's rulings should be affirmed, we reject its forfeiture argument. The trial court's order says expressly that it is based on reexamination reports filed by the State. Those reports are in the record, and we can and have reviewed them. Thus, the absence of any transcript from October 23, 2018, (assuming that one ever existed) does not prevent us from reaching the merits of a challenge to the court's rulings in favor of the State. Moreover, while the State argues that we should defer to the reasoning of the trial court, which might conceivably be reflected in a transcript, as noted above, most courts have viewed the question of whether the State has made the requisite showing that there is no probable cause for an evidentiary hearing as a question of law to be reviewed *de novo.* See *infra* ¶ 49.

¶ 61    Mr. Walls's brief, however, offers us nothing that calls into question the trial court's conclusion that the State's petitions should have been granted. The State's petitions fully support the circuit court's finding that there was no probable cause to warrant an evidentiary hearing to

determine if Mr. Walls was still a sexually violent person. Dr. Travis's reports, attached in support of the petitions, are detailed above. They contain a comprehensive history of Mr. Wall's conduct both in and out of prison and the IDHS facility. The reports contained several risk assessments and advised the court that Mr. Walls had consistently refused to meet with evaluators and refused treatment. Dr. Travis's professional opinion was that the risk that Mr. Walls posed as a sexually violent person had not changed and that he clearly remained an SVP.

¶ 62    Mr. Walls also offers no argument as to why the court erred in denying his own two motions and the State also does not address those rulings. The burden is clearly on Mr. Walls as the appellant to explain to this court why the trial court erred. See *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 875 (2010) (repeating the admonishment that "[a] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and legal argument presented" (internal quotation marks omitted)). In any event, and as the State explained to the trial court, these motions were not a proper way to seek discharge. Rather, once a person has been adjudicated an SVP, the only way that he can obtain discharge from custody is "upon a finding that he is not a sexually violent person." *White v. Phillips*, 405 Ill. App. 3d 190, 193 (2010). Thus, the court clearly did not err in denying Mr. Walls's motions.

¶ 63            C. The Troubling Lack of Advocacy on Behalf of Mr. Walls

¶ 64    As a court of review, our role is to assess the individual rulings of the trial court and affirm or deny those rulings according to the proper legal standard. In doing so, however, we are sometimes afforded a unique overview of the proceedings as a whole that may not have been available to the trial court. That is especially true in cases, like this one, that were presided over at various points in their long histories by different judges. The record in this case reflects both that

Mr. Walls has now been in the custody of IDHS for almost 20 years and that during much of that time he represented himself in court proceedings relating to his continued involuntary commitment. There can be no doubt that, during those periods when he was represented by counsel, Mr. Walls was a difficult legal client, just as he has been an uncooperative patient, repeatedly refusing evaluations and treatment. However, the absence of consistent advocacy on Mr. Walls's behalf, both in the trial court and on appeal, makes it difficult for us to have much confidence in how the requirements of the SVP Act have been carried out.

¶ 65     The court will highlight a few of the obvious repercussions of the absence of consistent lawyering here. First, although the SVP Act's speedy trial provision requires a hearing within 120 days (725 ILCS 207/35(a) (West 2002)), Mr. Walls remained in custody for almost *12 years* before a hearing was held on the State's petition. When Mr. Walls first appealed the court's determination that he was an SVP, that original appeal (appeal No. 1-15-0888) was dismissed by this court because no briefs were ever filed. Although Mr. Walls later filed a second notice of appeal from that determination (appeal No. 1-15-1075), no attorney represented him on that appeal for over four years, until this court appointed the Public Defender. No action at all was taken on this appeal during these four years. As his own advocate on appeal, Mr. Walls has made only one truly discernible argument and that argument (about the use of his juvenile adjudications) is contrary to the SVP statute. He has also not filed a reply brief responding to the State's arguments. An effective advocate might be able to convince Mr. Walls that his only way out of confinement at this point is to cooperate with the doctors and receive treatment for his diagnosed conditions. At the very least, an effective advocate would make this process a truly adversarial one, allowing the trial court, and this court on appeal, to make reasoned determinations of Mr. Walls's current condition that are not based solely on the State's unchallenged assurances that the status quo must

be maintained.

¶ 66    There can be little doubt on this record that Mr. Walls repeatedly asked to represent himself or to change lawyers. However, there appears to have been no determination by any court that Mr. Walls was competent to waive counsel when he was permitted to do so. While Mr. Walls clearly has the right to represent himself, his waiver of the right to counsel must be knowingly and intelligently made. As both this court and our supreme court have made clear: " '[a]lthough a defendant need not possess the skill and experience of a lawyer in order competently and intelligently to choose self-representation,' " a determination of " 'whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances of that case, including the background, experience, and conduct of the accused.' " *People v. McNutt*, 2020 IL App (1st) 173030, ¶ 84 (quoting *People v. Kidd,* 178 Ill. 2d 97, 104-05 (1997)). It appears that no court has made this determination regarding Mr. Walls.

¶ 67    The right to counsel is crucial to our confidence in the results of SVP proceedings. As this court has recognized, it is the "robust, adversary character of the commitment proceedings" under the SVP Act that "minimize[ ] the risk of the erroneous commitment of a person who is not sexually dangerous." (Internal quotation marks omitted.) *In re Commitment of Weekly*, 2011 IL App (1st) 102276, ¶ 66. This is because, as this court recognized in *Weekly,* an individual may be confined as an SVP even where that individual could not be incarcerated because he or she is not fit to stand trial or competent. Under the SVP Act, it is essential that the attorney representing the individual subject to commitment be "able to exercise" that individual's rights, if that person lacks competence. *Id.*

¶ 68    While the court could at this point appoint counsel to represent Mr. Walls on this appeal, that counsel would be forced to advocate from the current record. And on this record, it is clear

that the trial court's orders are correct.

¶ 69    It is our understanding that the State must file an annual report with the court regarding Mr. Walls, together with a petition if it seeks to avoid an evidentiary hearing. The trial court is advised that, when that occurs, counsel should be appointed for Mr. Walls. In the event that Mr. Walls seeks to waive such counsel, the trial court is advised to hold a hearing to determine whether or not he is competent to do so. In the event that Mr. Walls files a notice of appeal from future rulings in this matter, the trial court is advised to appoint counsel to represent him on appeal, utilizing the same procedure and allowing waiver only in the event that Mr. Walls is competent to waive counsel.

¶ 70    Mr. Walls may still be a sexually dangerous person who should remain in the custody of IDHS. Unless and until the adversary process is functioning fully, however, we can have no real confidence that this is so.

¶ 71                                    IV. CONCLUSION

¶ 72    For the foregoing reasons, we affirm the trial court's orders adjudicating Mr. Walls a sexually violent person, committing him to the custody of IDHS, and denying his motion for discharge from commitment. We also affirm the trial court's order granting the State's petition for a finding that no facts exist warranting an evidentiary hearing to determine if Mr. Walls is still a sexually violent person. The trial court is advised, however, to appoint counsel for Mr. Walls prior to considering any future petition from the State relating to the continuation of his confinement as a sexually violent person. In the event that Mr. Walls seeks to proceed without counsel, the court is advised to hold an evidentiary hearing to assess his competence to waive counsel.

¶ 73    Affirmed.